317 So.2d 506

**Doris COOKS, alias**

v.

**STATE.**

**5 Div. 239.**

Court of Criminal Appeals of Alabama.

June 17, 1975.

Arnold W. Umbach, Jr., Opelika, for appellant.

William J. Baxley, Atty. Gen. and Richard F. Calhoun, Sp. Asst. Atty. Gen., for the State, appellee.

**540**

TYSON, Judge.

Following the remandment of this cause for a hearing with counsel on the merits of the appellant's Youthful Offender Petition, the trial court then proceeded in accordance with the mandate of this court, and has sent this court a return to the remand, showing full compliance. After full investigation by the probation officer, and a hearing on the merits of the appellant's petition, the trial court, after considering the appellant's prior record, including two convictions of petty larceny, and one for sale of marihuana, entered the following findings:

"The Court is of the opinion that this defendant is not and was not entitled to trial under the Youthful Offender Act."

It should be noted, however, that since the answer to the remandment, the Alabama Supreme Court has modified the effect of *Morgan v. State,* 291 Ala. 764, 287 So.2d 914, by holding that referral to a probation officer is no longer mandatory. The trial courts may now make or order such investigation as they deem necessary, and then hold an examination, and then make a determination whether or not to accord youthful offender treatment to an accused. *Clemmons v. State,* 1975, 294 Ala. ——, 321 So.2d 238.

We will now review the merits of this appeal. Taylor Noggle testified that he had been employed as a State Toxicologist with the State of Alabama Department of Toxicology and Criminal Investigation at Auburn for the past two years. Noggle testified to his qualifications and to the fact that over the past two years he had tested for marihuana "several thousand times." Noggle stated that on Monday, April 10, 1972, while employed as State Toxicologist, Deputy Watkins delivered some evidence to him, and one of the items was a brown manila envelope. Noggle testified that in the envelope he found a clear plastic bag, which contained a green-brown vegetable matter. Noggle further testified that upon examination, he determined the vegetable matter to be Cannabis Sativa L., which is commonly known as "marihuana."

Ronnie Watkins testified that he was an investigator with the Lee County Sheriff's Department, and was so employed in February, March, April, and May of 1972. Watkins testified that he came to know Alex C. Smith in February of 1972 when Smith applied for a job as a deputy sheriff with the Lee County Sheriff's Department. Smith was sworn in as a deputy sheriff on March 14, 1972. Watkins stated that Smith was to work directly under him as an undercover agent, with his primary purpose to be the purchase of illicit or contraband drugs. Watkins testified that Smith was paid his expenses and received some compensation, but that it was not carried on the payroll, but was paid out of a special fund that is authorized by the Probate Judge and used at the Sheriff's discretion. Watkins stated that Smith was paid on the time he was employed, the time he put into the job, not as to the number of cases, or defendants. He was still on the force as of the time of trial.

Watkins stated that during this period he knew one Michael Watson. Watkins testified that Watson had been arrested and convicted for the sale of L.S.D., and had thereafter expressed a desire to work as an informer for the Lee County Sheriff's Department, which he did. Watson was to introduce Deputy Smith in traffic in drugs, and in general, act as a go-between for the people on the street and Deputy Smith. Watkins testified that Mr. Smith was working in an official capacity, duty authorized and commissioned by the Lee County Sheriff's Department. He had all the powers of arrest. Watkins stated that Mickey Watson was an informant, that he had no powers of arrest, and was not given any authority by the Sheriff of Lee County.

Watkins testified that on or about April 3, 1972, in connection with an investigation into one Doris Cooks, he and Sheriff Pearson met Watson and Deputy Smith behind Mount Olive Church, which is on Lee County 43, on Society Hill Road, South of Opelika, in distance some two or three miles. They met behind the church in the graveyard in the daytime. Watkins stated that he and Sheriff Pearson got into the undercover vehicle with Smith and Watson, at which time undercover Deputy Smith turned over a white business-type envelope that bore the initials "A. C. S." over the seals. After returning to the office, Watkins opened the envelope, removed a small cellophane plastic bag, which contained a substance, placed it in a brown manila envelope, marked it for identification purposes, and delivered it to the Toxicologist.

On cross-examination, Watkins testified that Smith had received no formal training in police work, but that he had received instructions from the Sheriff's Department as to the proper procedure for handling evidence, drug traffic, and the proper way to make a purchase, or make a buy, from an individual. Watkins stated that Smith was also instructed as to what he could and could not do as a police officer, or as a deputy sheriff, along the lines of entrapment; that if he purchased narcotics from a violator, it had to be something that the violator wanted to do, and he could not entice the violator to sell to him. Watkins testified that the cost of the total investigation, the undercover investigation, was a little better than $1800.00, and ran for a period of about seventeen weeks.

On redirect, Mr. Watkins testified that of the $1800.00, $600.00 was used to purchase narcotics; $300.00 was spent for meals for Mr. Smith and informants; approximately $400.00 was spent for gas, oil, and operation of three undercover vehicles; approximately $400.00 was spent for the repairs and the purchase of an undercover vehicle, which was a motorcycle, and miscellaneous expenses; $100.00 was paid to Mr. Smith as salary. Watkins stated that in the vicinity of April 14, 1972, Smith began working full time for the Sheriff's Department as an undercover agent, and that during this period he was working full time, the Sheriff's Department paid his living expenses, plus $100.00 salary. Watkins testified that most, but not all of the $1800.00 passed through Mr. Smith's hands. Some expenses and repair bills were paid directly by the Sheriff's Department.

Alex Smith testified that on March 14, 1972, he was hired as a deputy sheriff by the Sheriff's Department of Lee County, and began working on a part-time basis. Smith stated that he had no previous law enforcement training, but had attended Columbus College in Columbus, Georgia, for about two years, and had completed two quarters at Auburn University. Smith testified that at the time he was hired as a deputy sheriff, he was employed as assistant manager in a paint store which his father managed in Phenix City, Alabama.

Smith testified that he was to do undercover work in narcotics and that Mickey Watson was one of his informants. Smith testified that on March 30, 1972, he and Mickey Watson were driving down Toomer Street in Opelika, Alabama, in a white Volkswagon Van when Doris Cooks and Ernestine Knight "hollered at them." Smith stated that he was driving, and that when he heard the defendant "holler," he pulled over in front of the apartment building where she was standing. Smith testified that after they exchanged greetings, the defendant asked Watson and him if they could find some L.S.D. for her. Watson replied that maybe he could, and maybe he could not. Smith stated that Doris Cooks next asked them if they would like to purchase some "grass," and he said, "Yeah." Smith testified that he took a five dollar bill out of his wallet, reached across Mickey Watson, and handed it through the passenger window to Doris Cooks, who handed him a plastic bag containing a leafy substance. Smith testified that the defendant had taken the bag from

her purse. Smith stated that Watson and he said they had to leave and drove off. About six blocks down the road they pulled over to the side of the road, and Smith placed the plastic bag containing the leafy substance into a white business envelope, which he initialed. Smith stated that he kept the envelope on his person until that night when he returned to his residence, at which time he placed the envelope in an ammo box. On the following Monday, April 3, Smith met Ronnie Watkins and Sheriff Pearson behind a large white church on Society Hill Road in Opelika, Alabama. Smith testified that at this time he turned various articles of evidence over to Ronnie Watkins, including the envelope which contained the substance he had obtained from Doris Cooks.

On cross-examination Smith testified that, although he saw the defendant reach down in the direction of her purse, he could not actually see her hand reach into her purse.

On redirect, Smith stated that he saw the defendant reach in the direction of her bag, and that he saw the straps move in a more or less downward motion as she was digging.

At the conclusion of the State's case, the defendant moved to exclude the State's evidence, and was denied.

Doris Cooks testified that she was twenty years old and lived at 1718-B Cherry Hill Circle, Opelika, Alabama. She stated that on March 30, 1972, she and Ernestine Knight approached, but did not come all the way up to a van driven by Alex Smith, in which Mickey Watson was riding. Cooks testified that she did not at any time during this occasion sell marihuana to Alex Smith. The defendant testified that she and Ernestine Knight were about the same height and in general looked "similar."

On cross-examination, Cooks stated she had seen Smith a couple of times before the day she went out to the van, but did not meet him until that day when two of her friends, Robert Calloway and Harvey McKay, who were also in the van, introduced him to her. Cooks testified that on the date of the alleged sale she never sold any marihuana to Smith, and, in fact, it was Smith and Watson who were trying to sell to her.

The State recalled Alex Smith in rebuttal. Smith testified that on March 30, 1972, when he was sold marihuana by the defendant, Robert Calloway and Harvey McKay were not present; that the only persons present, aside from himself, were Mickey Watson, Ernestine Knight, and the defendant, Doris Cooks.

Appellant's motion for new trial was denied.

I

■ On remand, after determining that appellant was not entitled to be tried as a youthful offender, the trial court attempted to reduce appellant's sentence from fifteen years to ten years imprisonment in the penitentiary. This took place on October 16, 1974, nearly two years after appellant was sentenced. The Circuit Court was without jurisdiction to reduce the sentence at this late date, as the request for a reduction was not made within thirty days of sentencing, or by December 28, 1972, when the trial court finally denied appellant's motion for new trial. Title 13, Section 119, Code of Alabama 1940; *Ex parte Merkes,* 43 Ala.App. 640, 198 So.2d 789 (1967), cert. den. 281 Ala. 722, 198 So.2d 790; *Essex v. State,* 45 Ala.App. 141, 227 So.2d 138 (1969).

II

Appellant contends that the trial court committed reversible error in failing to grant her motion for a mistrial and to exclude the argument of the District Attorney, which was made during the District Attorney's closing argument.

During the closing argument of the District Attorney, the following occurred:

"CLOSING ARGUMENT BY MR. WRIGHT: —now, ladies and gentlemen, go back there and use your good, common, judgment; reason out the facts, and do your duty and you will rid us of one more pusher.

"MR. GULLAGE: Your honor, I object to that and move to exclude Mr. Wright's argument and move for a mistrial. There's no evidence in this case that she's a pusher.

"THE COURT: Well, I'm going to leave that up to the jury. The motion for a mistrial is respectfully overruled. I think that's entirely a question for the jury."

In *Barnett v. State,* 52 Ala.App. 260, 291 So.2d 353, a statement quite similar to the one in question was made during the District Attorney's closing argument:

" '. . . In other words, get the pushers. You get them and you're going to stop the drugs. Or, at least, going to slow them up.' "

■ There, this Court held that such a statement was merely arguendo of the District Attorney's opinion of the case, and did not constitute reversible error. *Barnett, supra,* and cases cited therein.

### III

■ Since the appellant had moved to exclude the evidence at the close of the State's case, requested in writing, the affirmative charge, and moved for a new trial, the issue of the weight and sufficiency of the State's evidence is before us for review. In this regard, counsel for appellant cites *Williamson v. United States,* 311 F.2d 441 (5th Cir.), for the proposition that a conviction cannot be had on the uncorroborated testimony of an informer hired under a contingent fee arrangement to produce evidence against particular named defendants as to crimes not yet committed. By-passing the question of whether or not such a rule would be binding on this Court,[1] suffice it to say that the undisputed testimony in the instant case shows that Alex Smith *was not hired* under a contingent fee arrangement. From the record:

"Q. All right, sir. Now, was he to be paid based on the number of cases he made, or time worked?

"A. He was paid on the time that he was employed, the time that he put into the job, no pay as to the number of cases or defendants."

Again, from the record:

"THE COURT: Mr. Watkins, let me ask you this question: Was Mr. Smith paid according to the number of cases he made?

"THE WITNESS: No, sir . . . I've already answered . . .

"THE COURT: Was it based on that?

"THE WITNESS: No, sir, it wasn't."

The undisputed testimony further shows that Alex Smith was not an informant, but a duly authorized and commissioned officer with the Lee County Sheriff's Department, having all the powers of arrest. Thus, *Williamson, supra,* is inapplicable.

The State here presented a prima facie case against the appellant. Therefore, the

---

1. In *Williamson,* Judge Rives stated that neither of the parties had cited a case involving such a contingent fee arrangement, and the court had been unable to find one. However, the Fifth Circuit went on to reverse the conviction, basing its decision largely on the principles first stated in *McNabb v. United States,* 1943, 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819, vis-a-vis the standard of conduct required from federal agents in the furnishing of evidence. The *McNabb* rule does not apply in Alabama, nor is it obligatory upon state trials in Alabama as a matter of constitutional law. *Fikes v. State,* 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; *Hutto v. State,* 278 Ala. 416, 178 So.2d 810 (1965); *Braggs v. State,* 283 Ala. 570, 219 So.2d 396 (1969).

trial court's rulings as to the weight and sufficiency of the evidence were correct. *Barnett v. State,* 52 Ala.App. 260, 291 So. 2d 353; *Russell v. State,* 53 Ala.App. 447, 301 So.2d 214; *Miller v. State,* 53 Ala. App. 213, 298 So.2d 633, cert. den. 292 Ala. 741, 298 So.2d 639.

After careful examination of this record, as required by law, we find same to be free from error. The judgment appealed from is therefore due to be and the same is hereby

All the Judges concur.

Affirmed.