Appellant was convicted of the offense of first degree theft of a 1974 Harley Davidson motorcycle and sentenced to six years in the State Penitentiary. At arraignment and throughout the trial proceedings he was represented by court-appointed counsel who represents him on this appeal. In the presence of counsel he pleaded not guilty to the indictment.
Omitting the formal parts the indictment reads as follows:
 "The Grand Jury of said county charge that before the finding of this indictment, Carl H. Bailey, Jr., alias Carl H. Bailey, alias Carl Bailey, whose name is otherwise unknown to the Grand Jury, did, on to-wit: February 29, 1980, knowingly obtain or exert unauthorized control over a *Page 408 
motor vehicle, to-wit: one 1974 Harley-Davidson motorcycle, black in color, vehicle identification no. 2A24719H4, 1979 License No. M40216, said motorcycle is equipped with two white saddle bags, white seat with a white box directly behind said seat, the property of Victor Bradford, with the intent to deprive said owner of said motor vehicle, in violation of Title 13A-8-3 of the Code of Alabama, against the peace and dignity of the State of Alabama."
The sufficiency of the evidence is not presented for review, although it is extremely conflicting. There was no motion to exclude the State's evidence; no request for the affirmative charge; no exceptions reserved to the oral charge to the jury, and there was no motion for a new trial.
The victim, Mr. Victor Bradford, testified that, on February 29, 1980, he lived in Cullman and owned a 1974 Harley Davidson motorcycle. The motorcycle was black with a white seat, storage box, and saddlebags and weighed over 700 pounds. On February 29, around 6:45 a.m., Mr. Bradford saw his motorcycle parked in its usual place, in the hallway of his apartment building. The front wheel was padlocked and would only roll in circles although the motorcycle would be started without a key. Mr. Bradford owned the only key to the padlock. He testified that, on February 29, it was locked. Mr. Bradford valued the motorcycle at between $2,000.00 and $2,500.00. When he returned from work around 4:30 p.m., his motorcycle was gone. He had not given anyone permission to take or ride it. In early July, Mr. Bradford identified several motorcycle parts which were being held by the Cullman Police Department as belonging to him. A copy of his tag receipt including the vehicle identification number (VIN) was introduced into evidence.
During his cross-examination, Mr. Bradford stated that after he had purchased the motorcycle he added the white storage box to it. He stated that he always parked his motorcycle in the same place and did not put any special identifying marks on it. He testified that he knew the various parts held by the police came from his motorcycle as he was familiar with their appearance and distinguishing characteristics.
Chris Bradford, the eleven year old son of Victor Bradford, testified that he resided with his father on February 29, 1980. He stated that his father drove him to school that morning but that he did not attend classes and walked home. Mr. Bradford testified that his father's motorcycle was at the apartment when he went to school.
Around 7:15 a.m., he returned home but could not get in because he did not have a key. Chris Bradford saw the appellant drive into the parking lot in a red over white car which had a cracked windshield. He stated that there was a passenger who remained in the car. He described the appellant as a man dressed in blue jeans and a jacket with a long red beard and long hair. Chris saw appellant knock on a downstairs apartment door. Afterwards, the appellant asked him if he was locked out, to which he affirmatively replied. Chris Bradford stated that the appellant, armed with a driver's license and screwdriver, forced the apartment door open for him.
Chris Bradford testified that he entered the apartment around 9:00 a.m. and began to watch television. He stated that the appellant left and went downstairs. He did not hear a motorcycle crank or see the appellant with a motorcycle helmet. He stated that he never left the apartment that day and did not know that his father's motorcycle had been stolen until his father arrived home that afternoon.
Mr. William McGukin testified that he lived less than one block from the victim's apartment, which was located at the end of a dead-end street. He stated that he had seen the victim's motorcycle several times. In particular, Mr. McGukin testified that, on February 29, 1980, between 9:00 and 10:00 a. m., he saw the victim's motorcycle leave the apartment building being driven by a man with long hair, a long red beard, and wearing a denim jacket. He stated that a car followed the motorcycle out of the apartment parking lot. Mr. McGukin testified that on the day before he had seen *Page 409 
a man fitting the above description ride on a motorcycle to the victim's apartment building.
On cross-examination, Mr. McGukin stated that, when he saw the motorcycle pass his residence, he assumed that the victim was driving it, but later realized that he was not. He stated that the motorcycle he saw leaving the victim's apartment was equipped with white saddlebags.
Cullman Police Investigator Lynn Wood testified that he had served as an investigator for two and two-thirds years and specifically handled all thefts of automobiles and motorcycles. Approximately seven weeks prior to the date of trial, Investigator Wood located several pieces of the victim's motorcycle including the engine at the residence of Mr. David Butler. Mr. Butler told him that the motorcycle frame could be found in a nearby pond. Investigator Wood performed a chemical analysis on the frame and engine VIN which had been physically altered. The VIN that he found matched that given to him as belonging to the victim's motorcycle.
Investigator Wood testified that, on March 15, 1980, another officer arrested the appellant. He was brought to the police station wherein he gave him his Miranda warnings. Afterwards, Investigator Wood asked the appellant whether he had shaved his beard to which he replied that about three weeks ago he had. The appellant stated that he had a white car and thought that his wife had driven it to work. The stolen motorcycle had not been located when Investigator Wood talked to appellant. The seat and saddlebags to the victim's motorcycle were never found.
On cross-examination, Investigator Wood testified that the appellant did not tell him the model of his car or whether it had a maroon top. Subsequent to their conversation, Investigator Wood went to the appellant's house in an attempt to locate parts of the stolen motorcycle. He found nothing. Investigator Wood described Mr. Butler as being about 5'7" or 5'8", weighing about 160 pounds, with shoulder length curly or fuzzy black hair and an inch to one and one-half inch beard.
Mrs. Lanita Butler, wife of David Butler, testified over the objection of the appellant that she was familiar with the 1974 Harley Davidson motorcycle that was in her husband's possession and which was picked up by Investigator Wood about seven weeks prior to appellant's trial. Mrs. Butler stated that the motorcycle was black with twin gas tanks, but could not describe the seat. She stated that between February 28 and March 3, she was in the hospital and that her husband did not have the motorcycle prior to then. Mrs. Butler testified that, two or three days after being released from the hospital, her husband and the appellant had a conversation about trading motorcycles. Mr. Monroe Chandler and she were present during this conversation. Mrs. Butler stated that her husband and the appellant decided to trade motorcycles with the appellant trading the 1974 motorcycle previously described. Mrs. Butler testified to a second conversation between her husband and the appellant with the appellant's wife present. Mrs. Butler testified that she heard the appellant say, ". . . that he felt much better after the saddlebags were at the bottom of the lake." Mrs. Butler stated that the conversation concerned the motorcycle the appellant had traded to her husband. A few weeks after the second conversation, the appellant and Mr. Butler had a conversation at the appellant's house. Both wives were present. Mrs. Butler testified that the appellant talked ". . . about how he was going to get out of this, as long as the motorcycle wasn't found that there wouldn't be any way that he could be charged with it, could be proven guilty of stealing it."
On cross-examination, Mrs. Butler testified that, although her husband has not been charged with a crime arising out of the instant incident, he had been arrested and charged with making a false report to the police. She stated that her husband falsely reported that the 1974 Harley Davidson motorcycle had been stolen. Mrs. Butler testified that her husband traded appellant a 1954 Model K Harley Davidson *Page 410 
for the 1974 motorcycle. She has not seen the 1954 motorcycle since her husband traded it and does not know if the appellant still owns it. Mrs. Butler stated that she had previously seen the appellant drive several different cars, but in February, 1980, remembers his driving a Gremlin. She stated that they owned a solid beige Chevrolet. Mrs. Butler testified that, on February 29, around 9:00 a.m. her husband visited her at the Cullman Medical Center.
With the conclusion of Mrs. Butler's testimony, the State rested.
The appellant's first witness was his girl friend Miss Pat House, who testified that she was not married to the appellant but had lived with him for about one and one-quarter years. She stated that, on February 29, 1980, she was at home with the appellant, Monroe Chandler, and Michael Burnett. Around 10:00 or 10:30 a.m., she left to go to the grocery store and returned between 11:30 a.m. and 12:00 noon. The appellant, Chandler, and Burnett were still there. Miss House testified that the appellant and she remained at home the rest of the day. She stated that Monroe Chandler left at dark, riding the appellant's 1974 motorcycle. She estimated that the appellant had owned the bike approximately two or three months and stated that it had a black seat and no saddlebags. Miss House stated that Mr. Chandler was stopped by the police for driving without a license and having an improper tag on the motorcycle. She stated that the motorcycle was impounded by the police as they thought it had been stolen. The motorcycle is now owned by Michael Burnett as he traded another black Harley Davidson for it. She stated that the appellant has sold the motorcycle Mr. Burnett traded to him. Miss House stated that the appellant owned a 1954 Model K Harley Davidson motorcycle and had owned it prior to their living together.
Miss House testified that the appellant has been buying and selling automobiles and motorcycles for the past nine or ten years. She stated that within the last year she has owned several cars. She stated that, on February 29, the appellant owned a four-door solid white Oldsmobile.
On cross-examination, Miss House stated that Investigator Wood picked up the appellant for shooting some windows. She testified that, on March 15, she was working at Pasquales and had driven to work in a solid white Dodge. She said it did not have a red top or a cracked windshield and denied ever owning a car matching the above description. However, she stated that, on March 15, the appellant owned a solid white Oldsmobile which was parked in the Pasquales' parking lot. She denied that it had a red top or cracked windshield and denied seeing a car matching that description parked there. Miss House stated that the appellant shaved his beard after February 29 but before he was arrested on March 15. She testified that he shaved it because she wanted to see how he looked without it. She testified that the appellant's beard was dark brown in color.
Mr. Monroe Chandler testified to his arrest on February 29, 1980, for driving the appellant's 1974 motorcycle without a driver's license and proper tag. Mr. Chandler stated that Michael Burnett currently owns the motorcycle. The motorcycle was impounded for a period of time as the police suspected that it was stolen. He stated that, on February 29, he arrived at the appellant's house between 8:00 a.m. and 9:00 a.m. and assisted him in repairing the appellant's 1954 motorcycle. He stated that the appellant had bought it from someone in Florida either in 1974 or 1975. Mr. Chandler testified that he and Michael Burnett and his wife were at the appellant's house all day although they arrived after he did.
On cross-examination, Mr. Chandler stated that he did not know if the appellant had sold the 1954 motorcycle that they had worked on in February to David Butler. He stated that in February he owned a solid white Oldsmobile.
Mr. David Butler testified that he owned a black 1954 Harley Davidson motorcycle for about four years until he traded it to the appellant in March, 1980. He stated that the only person who had possessed the *Page 411 
motorcycle during the four years he owned it was Teddy Russell who kept it for about one year when he moved. He last saw the motorcycle at the appellant's house. The appellant traded a 1974 Harley Davidson motorcycle for his motorcycle. No cash was exchanged or bill of sale drawn. Mr. Butler painted the motorcycle red. The last time he saw the motorcycle, it was at his house dismantled. Mr. Butler testified that it was dismantled because he knew it had been stolen and the parts could be more easily hidden. He stated that he was arrested for making a false report to the police.
On cross-examination, Mr. Butler testified that the appellant had telephoned him and discussed trading motorcycles. He stated that he picked up the motorcycle at the appellant's house one night while his wife was in the hospital. He testified that at his house a few days later, in the presence of his wife, Teddy Russell and Russell's girl friend, the appellant and he had a conversation about the 1974 motorcycle he had received. He stated that the appellant told him that the 1974 motorcycle was stolen. Mr. Butler could not remember any other conversations with the appellant concerning the 1974 motorcycle or any discussion about any saddlebags.
On redirect, Mr. Butler testified that he took Investigator Wood to the pond where he had thrown the frame of the 1974 motorcycle, although he did not tell him that it had been stolen. He told another police officer that he had thrown the frame into the pond to dispose of it. Mr. Butler testified that the engine to the 1974 motorcycle had been on his property. He stated that he reported the 1974 motorcycle, the frame of which he had thrown into the pond, as stolen. Mr. Butler testified to his February 29 visit to his wife in the hospital. He stated that he drove his beige Chevrolet to the hospital.
The appellant took the stand and testified that, for the past ten years, he had been in the business of buying and selling automobiles and motorcycles although he had no business license to do such. He stated that he had owned a 1954 Harley Davidson motorcycle since 1975, having purchased it in Jasper. He had once traded it to Gary Coker but repossessed it because Coker did not finish paying for it. He testified that it had been in his possession since September, 1979. The appellant stated that no other person had possessed the motorcycle. He stated that, two or three days prior to his testifying, he traded the motorcycle to Bobby Bright. In February, the appellant owned the 1954 motorcycle and a 1972 Harley Davidson motorcycle which was impounded by the police when Monroe Chandler was arrested. The appellant traded the same motorcycle to Michael Burnett. It was again impounded.
The appellant testified to Monroe Chandler's February 29 visit to his house and Pat House's trip to the grocery store. The appellant testified that he was home during the period of time that Miss House was shopping. He testified to Michael Burnett's arrival at his home shortly before Miss House's departure. The appellant denied transacting any business with David Butler and denied having any conversation with him concerning motorcycles. He denied owning a motorcycle with a white seat or saddlebags and ever seeing a Harley Davidson motorcycle so equipped. The appellant stated that there is no difference between a 1972 and 1974 model Harley Davidson motorcycle unless altered by the owner. He testified that a 1974 Harley Davidson motorcycle with stock exhaust pipe could probably be heard up to a distance of about one mile. The appellant testified that he shaved his beard around March 1st because his girl friend had never seen him clean shaven. He began to regrow it immediately thereafter. He testified that, in February, 1980, he owned a solid white Oldsmobile and had borrowed an off-white Dodge from his brother-in-law.
On cross-examination, the appellant denied helping Chris Bradford enter his apartment on February 29. The appellant recalled a March 15 conversation with Investigator Wood wherein he told him that Miss House's car, a white Oldsmobile, would be found parked at Pasquales. He stated that, *Page 412 
in February, his hair would have extended beyond the base of his motorcycle helmet. The appellant denied knowing that the VIN numbers on the motorcycle which he loaned Monroe Chandler had been altered and that it had been stolen. He stated that he did not think that Michael Burnett's wife, Nina Burnett, owned a red over white Oldsmobile and denied borrowing a car from her matching that description.
At the end of his testimony, the appellant requested a continuance until Gary Coker could be located and brought to court to testify. He stated that Mr. Coker would contradict Mr. Burnett's testimony concerning ownership and possession of the 1954 motorcycle. The appellant had knowledge of such alleged testimony prior to trial and apparently had not subpoenaed Mr. Coker until the last day of trial. The jury had been sequestered in his trial. The trial court denied the appellant's motion and the appellant rested.
On rebuttal, Investigator Wood testified to his March 15 conversation with the appellant concerning the location of Miss House's car. He stated that the appellant said her car, a white Oldsmobile Cutlass, would be found in the Pasquales parking lot where she worked. Investigator Wood drove to Pasquales and found a white Cutlass with a maroon top and cracked windshield parked in the lot. A tag check revealed that the car was registered to Nina Burnett, Michael Burnett's wife. He stated that he has not discussed this matter with her. Investigator Wood talked to Miss House about the car. She denied any knowledge of it.
Appellant's first insistence of error concerns itself with the failure of the trial court to warn Mrs. Butler, at his request, of her constitutional right against self-incrimination.
Outside the presence of the jury, the State informed the trial court of the substance of Mrs. Butler's testimony and her overhearing several conversations between the appellant and her husband concerning the stolen motorcycle. The State was not opposed to the trial court informing the witness of her right against self-incrimination.
The appellant argued that her testimony might implicate both her husband's and her participation in receiving stolen property.
Apparently, Mrs. Butler was not present during the above colloquy. It is clear that she merely witnessed and heard the conversations between her husband and the appellant. Her testimony was certainly not incriminating in any manner, form or fashion.
The privilege of a witness to refuse to incriminate himself by answering pertinent questions is personal to the witness, and cannot be claimed by or for another, including the party by or against whom he is called to testify. Warren v. State, 292 Ala. 71, 288 So.2d 826, (reversed on other grounds), Beauvoir Club v.State, 148 Ala. 643, 42 So. 1040; Dickerson v. State, 21 Ala. App. 631,111 So. 190. We find no error in the action of the trial court in refusing to act upon the request of the appellant.
The application of the privilege of confidential communications between spouses is applicable only in a prosecution against either spouse where a spouse is a competent witness. § 12-21-227, Code of Alabama 1975; Gamble, McElroy's Alabama Evidence, § 103.01 (3rd ed. 1977). It is inapplicable to exclude testimony by one spouse concerning an overheard conversation between the other and a third party. Arnold v. State, Ala., 353 So.2d 524.
In connection with the above issue, the appellant asserts that the State, through its Assistant District Attorney, and the trial court, through its actions, improperly granted Mrs. Butler immunity from prosecution in exchange for her testimony.
Outside the presence of the jury, the trial court inquired of the State as to whether it planned to indict Mrs. Butler to which the Assistant District Attorney negatively replied. The trial court stated that if she was indicted, apparently for some crime evidenced by her testimony, the court would help in getting the charges dismissed. *Page 413 
Apparently, Mrs. Butler was not present during the above colloquy. It appears that neither the trial court nor the Assistant District Attorney made an express promise of immunity to Mrs. Butler. Moreover, her testimony at trial was not incriminating. See generally Long v. State, 86 Ala. 36,5 So. 443; Gipson v. State, Ala.Cr.App., 375 So.2d 504, cert. denied, Ala., 375 So.2d 514 (1979); Yarber v. State, Ala.Cr.App.,375 So.2d 1212, reversed on other grounds, Ala., 375 So.2d 1229, on remand, Ala.Cr.App., 375 So.2d 1231, reversed, Ala.,375 So.2d 1231.
Appellant contends that the trial court erred in allowing the State to cross-examine him concerning whether he had shot out some windows in the vicinity of the victim's apartment.
We note that initial inquiry into the subject was made by the State through its cross-examination of Miss House. No objection was interposed by the appellant. On his redirect examination of Miss House, the appellant further inquired into the matter. We find no error intervened here.
During his cross-examination, the appellant was asked and answered several questions concerning the shooting of some windows before his general objection to a question was made. The trial court overruled the objection stating that such had been brought out during the appellant's direct examination. The appellant answered the question in the negative. Several questions and answers followed the objected to question with no objection being interposed to any of them.
A negative response from an accused to a question causes no injury to him. Yates v. State, Ala.Cr.App., 390 So.2d 32; 7 Alabama Digest Criminal Law 1170 1/2 (2).
Appellant's last contention of error centers upon the trial court's refusal to grant him a continuance in order that he might locate a witness he had subpoenaed but who had not been served.
A motion of continuance and the denial thereof due to an insufficiency of time to locate a witness is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed unless clearly abused. Fletcher v. State,291 Ala. 67, 277 So.2d 882; Wilson v. State, Ala.Cr. App.,384 So.2d 1243; Williamson v. State, Ala.Cr.App., 370 So.2d 1054, cert. denied, Ala., 370 So.2d 1066; Rogers v. State, Ala. Cr.App.,365 So.2d 322, cert. denied, Ala., 365 So.2d 334; Hillyer v. State, Ala.Cr.App., 351 So.2d 646, cert. denied, Ala., 351 So.2d 648. A reversal of conviction because of the trial court's refusal to grant a continuance requires "a positive demonstration of abuse of judicial discretion." Beauregard v. State, Ala.Cr.App.,372 So.2d 37, cert. denied, Ala., 372 So.2d 44.
Counsel is expected to exercise diligence in preparing his case for trial and for procuring necessary witnesses. Godfrey v.State, Ala.Cr.App., 383 So.2d 575, cert. denied, Ala.,383 So.2d 579.
We find no abuse of the trial court's discretion in denying the appellant's motion for a continuance.
The evidence is clearly sufficient for the jury to have found the appellant guilty of theft of property in the first degree. §13A-8-3 (b) Code of Alabama 1975 (Supp. 1979). His alibi evidence presented a jury question and the jury chose to ignore it completely.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 414