Inman Young, III was indicted for the possession of marijuana in violation of § 20-2-70, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and after a sentencing hearing the trial court set his punishment at fifteen years in the penitentiary.
John Carlisle testified that he was under contract with the Baldwin County Sheriff's Department to investigate drug smuggling and other illegal activity in the Baldwin County area. Pursuant to his duty as an undercover investigator, he contacted the appellant and arranged a charter of appellant's airplane. Appellant was to fly Carlisle around South Baldwin County to look at some land. On January 9, 1982, Carlisle and Lance Monley — a Baldwin County Deputy Sheriff — met the appellant at Ferguson's *Page 685 
Airport. Carlisle and Monley instructed the appellant to fly over water inlets, airports, and various other pieces of land in Baldwin County. Deputy Monley was taking pictures of abandoned airstrips, water inlets, and "part of the Gulf where boats or planes would have access to." This activity prompted the appellant to make the comment that "you guys aren't trying to buy any land, you're looking to bring in a load of drugs." (R. 20) At this point, Carlisle told the appellant that he was getting paid to fly the plane and to mind his own business.
Several times during the flight appellant mentioned "bringing loads in from Miami and the Lauderdale area and that he had just brought in a load with that same airplane." (R. 20) When the flight was over Carlisle told appellant that he would get back in touch with him. Several days later Carlisle called the appellant and set up a meeting at the Convention Center in Gulf Shores. He told appellant that he had a buyer from Montgomery that was interested in drugs and asked appellant if he had sold all of the drugs he brought back from south Florida. Carlisle had several more conversations with the appellant about the details of the drug transaction. Appellant agreed to use his airplane to transport some marijuana to Montgomery, but the weather was bad. Appellant then agreed to take the marijuana to Florida on January 14, 1982. Prior to reaching the Florida state line the appellant was arrested.
Carlisle testified that he was in a surveillance car, approximately one mile behind the appellant, and came to the scene of the arrest. He observed the officers arresting the appellant and saw "a couple of garbage bags" of marijuana in the back of the appellant's pickup truck. He further testified that he had two physical meetings with the appellant and talked with him on the telephone "three or four times" prior to the arrest. The appellant never told Carlisle he did not want to deal with Carlisle, nor did he ever appear reluctant to do so.
Lance Monley testified that he was an investigator for the Baldwin County Sheriff's Department. He corroborated Carlisle's testimony about the initial meeting with appellant and further testified that he was present when Carlisle talked to the appellant on the telephone. He and Carlisle set up a meeting with the appellant at the Convention Center. Carlisle was wearing a "body mike" and Monley and Chief Deputy Anderson worked the "mike" from outside the Convention Center. Monley was able to overhear most of the conversation between Carlisle and the appellant and stated that they agreed to buy a sample of marijuana from appellant and that the appellant was to deliver this sample to Carlisle in Florida.
On January 14, 1982, he was part of the surveillance team that followed the appellant. There were a number of other law enforcement officers also working the surveillance. When the appellant was stopped Monley observed marijuana in a dark colored trash bag, which was located in the rear of the appellant's truck. The marijuana was turned over to Norman Pearce.
Jim Anderson testified that on January 14, 1982, he was involved in the surveillance of the appellant. He was flying surveillance along with Deputy Stewart. They followed the appellant's truck to a trailer in Baldwin County. Appellant stayed at the house trailer for approximately 15 minutes. Appellant then drove to a service station in Foley, Alabama, staying approximately 10 minutes. From this point appellant proceeded to Highway 90 in Baldwin County, driving east, and he was stopped by officers.
Anderson further testified that he was the custodian of evidence and he received 10 pounds of marijuana from Deputy Pearce.
Norman Pearce testified that on January 14, 1982, he was assigned to ground surveillance of the appellant. He watched appellant's house until the appellant left, and he followed the appellant from there. Appellant left his home and got into a pickup truck and drove to a house trailer in "Bon Secour." Appellant entered the trailer and approximately 15 minutes later, exited the *Page 686 
trailer along with another person. One of these people was carrying a brown plastic bag and placed it into the back of appellant's truck. Appellant got back into his truck and proceeded to drive to a service station. From there, he headed to Highway 90 and drove East. Pearce then stopped the appellant. The brown bag that he observed being placed in appellant's truck was there, along with other bags which looked the same. Pearce checked the plastic bag and found that it contained marijuana. The appellant was arrested at the scene.
Pearce took custody of the marijuana and placed it in the trunk of his vehicle. He transported the marijuana to the State lab in Mobile on January 15, 1982.
Deborah Sennett testified that she is employed by the State Department of Forensic Science in Mobile, Alabama. She analyzes drug samples submitted to the lab by law enforcement officers. On January 15, 1982, Deputy Pearce gave her a drug sample. Her analysis of the substance revealed that it was 10.03 pounds of marijuana. She further stated that the marijuana was packed in a brown garbage bag. After her analysis of the substance, she returned it to Deputy Pearce.
Appellant offered no testimony in his behalf and the case was submitted to the jury.
 I
The appellant contends that the trial court committed reversible error by proceeding to trial without the presence of two defense witnesses. The record establishes that these witnesses, Vincent Allen Jenks and Gail Marie Jenks, were residents of the State of Florida. Prior to trial in this cause, the appellant made the following motion for a continuance:
 "MR. HUDDLESTON: Leastly, on the week following the last motion docket when a continuance was denied and I first became aware that the case was to be filed, a petition for Section 12-21-283, certificate pursuant to that section of the Alabama Code requesting that the certificate issue commanding the appearance of two very important witnesses for the Defendant's case, Vincent Allen Jenks and Gail Marie Jenks.
 "The certificate in respect to the attendance of foreign witnesses was executed by the Court on the 10th day of May, 1984. The certificate states as follows:
 "`This case having come to be heard on to-wit the 10th day of May, 1984, and it appearing to this Court that the State of Florida has made provisions for commanding appearance within its borders to attend and testify in criminal proceedings commenced on or about to be commenced in the State of Alabama and it further appearing that Vincent Allen Jenks and Gail Marie Jenks are material witnesses in a criminal proceeding pending before this Court and that said witnesses will be required to call and testify for four days beginning May 29th, 1984.'
 "The undersigned is signed and hereby certifies, is certified in accordance with Section 12-21-283.
 "Now, the certificate was forwarded together with the required fees to the State of Florida. The appropriate office of the State of Florida and the Sheriff's office attempted to serve the two witnesses. Now, I do not now know about the witness, Gail Marie Jenks, but I did receive word this morning from my secretary who received a call from the Escambia County Sheriff's Department that the Sheriff had, at least at that point in time, been unable to locate Vincent Allen Jenks at the address contained on the certificate.
 "That the address was obtained from Jay Ledbetter, the State Probation Officer herein Baldwin County, which was the last known address of Vincent Allen Jenks and Gail Marie Jenks then husband and wife.
 "To my knowledge, neither Gail Marie nor Vincent Allen Jenks has appeared and their testimony is pertinent, and in pertinent part would be as follows:
"Judge, do I need to make an offer of proof on this? *Page 687 
 "THE COURT: Whatever you think you have to do, go ahead.
 "MR. HUDDLESTON: That immediately prior to the arrest of the Defendant in this case, Inman Young, III, he stopped by their trailer and that was in Foley, Alabama. That inside the trailer, there was a significant amount of contraband or controlled substances and that they were subsequently charged with the same offense that Mr. Young has been charged with. They received a sentence for a year, the two, a misdemeanor possession charge and were given unsupervised probation for the entire period of that sentence.
 "Consequently, it appears that their testimony would be relevant to determining how controlled substances allegedly found in the vehicle of the Defendant made their way there. I believe this Defendant would admit that the controlled substances came from them rather than on the initiation of the Defendant.
 "There is also other testimony which would be solicited from these two witnesses, but it is, it would not be in my client's best interest to inform the prosecutor of these facts at the present time. I will do so by post-trial motion or affidavit.
". . .
 "And on the basis of the failure of the Jenks' to appear, I would like to move this Court for a continuance of the trial of this case until such time as the Sheriff's Department can locate them.
"THE COURT: Deny the motion. Let's go . . ."
In deciding whether the trial court should have granted a continuance in order to procure the attendance of the absent defense witnesses, it should be noted initially that a continuance in a criminal case is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed on appeal unless clearly abused. Fletcher v.State, 291 Ala. 67, 277 So.2d 882 (1973); King v. State,435 So.2d 769 (Ala.Cr.App. 1983); Pritchett v. State, 445 So.2d 984
(Ala.Cr.App. 1984). The above stated rule clearly applies to cases where the continuance is sought due to an absent witness.Bailey v. State, 398 So.2d 406 (Ala.Cr.App. 1981); Weaver v.State, 401 So.2d 344 (Ala.Cr.App. 1981); Pritchett, supra.
"The Court of Appeals has previously stated:
 "Before it can be said that the accused has been denied this constitutional right, he must apply to the court for the issuance of an attachment and show to the court that the witness has been served with a subpoena a sufficient length of time before the trial to afford an opportunity to the witness to obey its mandate, that the witness is in the jurisdiction of the court, and that his attendance can be obtained within a reasonable time by compulsory process . . ."
Thomas v. State, 15 Ala. App. 408, 73 So. 558 (1916). King v.State, 435 So.2d 769 (Ala.Cr.App. 1983); Pritchett, supra.
A reversal of a conviction because of the trial court's refusal to grant a continuance requires "a positive demonstration of abuse of judicial discretion." Beauregard v.State, 372 So.2d 37 (Ala.Cr.App.), cert. denied, 372 So.2d 44
(Ala. 1979); Weaver, supra. The refusal to grant a continuance is not error in the absence of a showing that the appellant could probably locate and have the witnesses served within a reasonable time. Myers v. State, 19 Ala. App. 98, 95 So. 331
(1923); Smith v. State, 368 So.2d 298 (Ala.Cr.App. 1978). Further, this court has previously held that where a showing by the appellant "did nothing to indicate that either witness would have voluntarily testified, or that a refusal by either of them to testify on the ground of the self-incriminating nature of the testimony would not have been upheld." Bradfordv. State, 387 So.2d 906 (Ala.Cr.App.), cert. denied,387 So.2d 913 (Ala. 1980).
The showing made by appellant's counsel in this case did not indicate that the witnesses could in fact be located. In fact, the showing was to the contrary. The Sheriff in Florida notified counsel that he *Page 688 
could not locate the witnesses. The subpoena was issued some fifteen days prior to trial. The record does not indicate that counsel had talked with the witnesses, nor that they would have testified voluntarily. The record further fails to reveal any real showing as to which facts the witnesses would testify to in support of the appellant, rather only speculation and surmise by appellant's counsel. Finally, the record does reveal that the witnesses were out of the State of Alabama and not located.
On the basis of the above, the trial court cannot be said to have erred in denying the continuance in this cause.
 II
Appellant argues that the trial court erred by limiting the cross-examination of a material witness as to a material portion of the evidence.
A review of the record indicates that the trial judge properly sustained objections to questions asked of State witness Carlisle. Defense counsel was attempting to ascertain how many individuals Carlisle was investigating under his contract with the Sheriff's Department. The prosecution objected to this question each time it was asked, and the objections were sustained. (R. 50, 51, 52)
"It should be noted initially that the range and extent of the cross-examination of a witness is a matter within the sound discretion of the trial court, and if the trial court determines that a question is not on a material issue in the case or is irrelevant, this court should not reverse that determination, unless the record reveals a clear abuse of discretion by the trial court. Coburn v. State, 424 So.2d 665
(Ala.Cr.App. 1982); Maund v. State, 361 So.2d 1144 (Ala.Cr.App. 1978); Turner v. State, 48 Ala. App. 754, 265 So.2d 885 (1972)."Terry v. State, 447 So.2d 1322 (Ala.Cr.App. 1984). In cases such as the one at bar, the government is entitled to protection when the probative value of the evidence is outweighed by the risks of exposing incomplete investigations. The information elicited from the witness Carlisle exposed his potential bias to the jury. The trial judge acted well within his discretion in sustaining the prosecutor's objections.
 III
Appellant contends that his motion to suppress the evidence was erroneously denied by the trial court. He bases this argument on two points: (1) the contract between Carlisle and the Sheriff's Department was an illegal contingent fee contract, and (2) the evidence was insufficient to show constructive possession.
John Carlisle testified that he was hired by the Baldwin County Sheriff's Department to investigate illegal drug traffic in Baldwin County. Carlisle was a long time paid informant for various law enforcement agencies all over the United States. Jim Anderson and Lance Monley came to see him in Pensacola, Florida. They told him they wanted to hire him to investigate for the Baldwin County Sheriff's Department and presented a contract to him. This contract was entered into on November 17, 1981, approximately two months before Carlisle made contact with the appellant. The contract calls for Carlisle to be paid $13,000 in biweekly installments, plus 25 percent of the value of any property confiscated.
Carlisle stated that no one discussed who he was being hired to investigate at the time the contract was entered. Some time after this, Carlisle was provided with intelligence reports on a number of different individuals who may or may not have been involved in drug trafficking. He was not hired to make a case against any specific persons in Baldwin County. He further stated that he did not request the 25 percent contingent fee arrangement, it was part of the initial contract presented to him and was provided by statute in Alabama.
Appellant argues that this "unlimited contingency contract" is illegal. He bases his argument on Williamson v. UnitedStates, 311 F.2d 441 (5th Cir. 1962), and United States v.Garcia, 528 F.2d 580 (5th *Page 689 
Cir. 1976). Appellant's reliance on Williamson and its progeny is misplaced.
It should be noted initially that the Fifth Circuit reversed the conviction in Williamson and "bas[ed] its decision largely on the principles stated in McNabb v. United States, 1943,318 U.S. 332, 340, 63 S.Ct. 608 [612], 87 L.Ed. 819, vis-a-vis the standard of conduct required from federal agents in the furnishing of evidence." Cooks v. State, 55 Ala. App. 538, 543,317 So.2d 506 (1975). The court in Cooks further opined that "[t]he McNabb rule does not apply in Alabama, nor is it obligatory upon State trials in Alabama as a matter of constitutional law. Fikes v. State, 352 U.S. 191, 77 S.Ct. 281,1 L.Ed.2d 246 [(1957)]; Hutto v. State, 278 Ala. 416,178 So.2d 810 (1965); Braggs v. State, 283 Ala. 570, 219 So.2d 396
(1969)." Cooks, supra.
If in fact such a rule were binding on the State courts in Alabama, the facts of this case are not such as to warrant reversal based on a contingent fee contract. Williamson, supra, prohibits contingent fee arrangements for one hired to produce evidence against particular named defendants as to crimes not yet committed. In United States v. Crim, 340 F.2d 989 (4th Cir. 1965), the court held that, where an informant was hired under a contingent fee arrangement and was closely supervised by law enforcement officers who hired him, his testimony is admissible. In Bullock v. United States, 383 F.2d 545 (5th Cir. 1967), the court distinguished Williamson, and held that such an informant's testimony was admissible where the defendant was not singled out in advance, at the time the contingent fee arrangement was entered.
The court in United States v. Garcia, 528 F.2d 580 (5th Cir. 1976), stated several reasons for allowing the testimony of an informant paid by such an agreement. The court stated that where the testimony of the informant is corroborated by others it will be admissible. The court also stated:
 "As objectionable as this practice is, this Court has heretofore required additional facts before rejecting the testimony of the informant; specifically, we have condemned the use of a contingent fee where it involves the promised payment of a specified sum to convict a specified suspect. Williamson v. United States, 311 F.2d 441 (5th Cir. 1962).
 "But we have refused to extend this ruling to the situation where an informant is paid a subsistence allowance and given a reward, as long as there is no evidence that he had been promised a specific sum to convict a particular person." (citation omitted)
Garcia, supra at 586. See also United States v. Gray,626 F.2d 494 (5th Cir. 1980) (following the ruling in Garcia, supra).
Further, in United States v. Walker, 720 F.2d 1527 (11th Cir. 1983), the court upheld the very contract at issue in this case. The court stated:
 "This arrangement is clearly distinguishable from that condemned by the Williamson court, since Carlisle was not told that his reward was dependent on making a case against particular individuals specified in advance. . . . Moreover, the statute at issue here is applicable to anyone who supplies information, and there are strong public policy justifications for permitting law enforcement officials to offer additional incentives to encourage citizens to come forward with knowledge of crimes."
Walker, supra at 1539-1540.
In the case sub judice, it does not appear from the record that the appellant was singled out at the time the arrangement was entered. The record does not indicate that Carlisle was promised payment contingent upon the conviction of a particular person. Furthermore, Carlisle's testimony was largely corroborated by Deputy Monley and it appears that Carlisle was closely supervised throughout the investigation. Pursuant to the above discussion, the trial judge acted properly in denying appellant's motion to suppress on these grounds.
As to the insufficient evidence argument, the record affirmatively shows that appellant had agreed to furnish Carlisle with a 10 pound bag of marijuana on January *Page 690 
14, 1982. Appellant was to deliver this marijuana to Carlisle in Florida. The testimony revealed that a brown garbage bag was placed in the appellant's truck by the appellant and someone else. The appellant was stopped as he headed in the direction of the Florida State line and 10.03 pounds of marijuana were found in a brown garbage bag in appellant's truck. The trial judge acted properly in denying this motion on these grounds.
 IV
Appellant argues that the trial judge erred in charging the jury on the issue of entrapment. He argues that entrapment was not pled and, therefore, this defense was not available.
Ordinarily the defense of entrapment is not available to a defendant who denies the act for which he was indicted. However, when the defendant chooses not to testify, no evidence "inconsistent with the defense" is introduced. Further, "a plea of not guilty is not repugnant to the defense of entrapment."Jackson v. State, 384 So.2d 134 (Ala.Cr.App. 1979), writ quashed, 384 So.2d 140 (Ala. 1980); United States v. Groessel,440 F.2d 602 (5th Cir. 1971).
While there may not have been any special plea entered by the appellant on entrapment, there was evidence of entrapment presented to the jury by the defense. Defense counsel referred to entrapment on several occasions during cross-examination of State witnesses. (R. 37-40, 42-44). Further, defense counsel's closing argument is replete with references to the appellant being "set-up" by Carlisle and others. (R. 110-115).
Since the record before us contains evidence which, if believed by the jury, would have shown that the informant's conduct created an inducement, for the purpose of prosecution, to the defendant to commit a crime which he otherwise had no intention to commit, the trial judge properly submitted the issue of entrapment to the jury. However, while the evidence may have been sufficient to submit the issue to the jury, it was not sufficient to show that the defendant was entrapped as a matter of law. See United States v. Walker, 720 F.2d 1527
(11th Cir. 1983); Geckles v. State, 440 So.2d 1189 (Ala.Cr.App. 1983). Moreover, the defendant argued a case of entrapment to the jury. Therefore, the trial judge's charge on entrapment as a defense was proper and not prejudicial to appellant's cause.
The judgment of the trial court is due to be and is hereby, affirmed.
AFFIRMED.
All the Judges concur.