BOWEN, Judge.
James Edward Abston was convicted of theft of property in the second degree and was sentenced to two years’ imprisonment. His sentence was suspended and he was placed on probation. He was also fined $250 and ordered to pay $25 to the Crime Victims’ Compensation Fund. He raises two issues on this appeal of that conviction.
I
First he argues that the trial court improperly limited his cross-examination of State’s witness Charles Ford, an investiga *625 tor with the Lauderdale County Sheriffs Office. On direct examination on the State’s case on rebuttal, Ford testified that the general reputation and the reputation for truthfulness of defense witness Jerry Wayne “Bit” Hyde was bad. The following then occurred on cross-examination:
“By Mr. Holt [defense counsel]:
“Q Do you know what community [Hyde] lives in?
“A He lives in different places. His last address, I believe, is his mother’s address he gave me last week.
“Q All right. That’s his mailing address?
“A I assume it is.
“Q All right. Do you know where he actually resides, where his clothes are, where his car is, where his family is?
“A No, sir.
“Q All right. If the evidence in this case shows without dispute that he lives just on — You know where Fowler Road is, don’t you?
“A Yes, sir.
“Q Do you know where Fowler Road intersects Butler Creek Road?
“A Yes, sir.
“Q And that’s generally called the Mount Zion community out there, isn’t it?
“A Yes, sir.
“Q Have you ever talked to anybody in the Mount Zion community about Jerry Wayne Hyde?
“A No, sir.
“Q Have you ever talked to anybody about Jerry Wayne Hyde’s reputation in the Mount Zion community?
“A Not that I’m aware of.
[[Image here]]
“Q All right. Can you tell me the names of any person that you have talked to about Jerry Wayne Hyde, other than some of your law enforcement buddies?
“MR. JONES [assistant district attorney]: We object to that, Your Honor. This is an investigation receiving information from the citizens all the time—
“MR. HOLT: Now, just a minute. I—
“THE COURT: You have a right to ask that question, and unless there is a reason not [to] answer it, then you may answer it.
“MR. JONES: Well, we object to it, Your Honor.
“THE COURT: Same ruling.
“THE WITNESS: The people that I have talked to about him in the community, I would be hesitant to mention their names for the simple reason that this information was given to us in confidence.”
Ford’s later testimony outside the presence of the jury established that the information he had received about Hyde concerned “possible criminal misconduct” and spanned a six- to eight-year time period. Defense counsel made the following motions:
“MR. HOLT: Your Honor, please I renew my motion [to compel the witness to answer] and I move the Court to require him to look at the Sheriff’s file, furnish me a copy of any file for examination that they have receives [sic] information that would be truthful for use of cross-examination. I further move the Court to require him to reveal to me the name of any of these alleged informers that he claims to be using as a basis for his conclusion about bad reputation for truthfulness and bad reputation for honesty.
“THE COURT: Motion denied.
“MR. HOLT: And I would respectively submit to the Court that that ruling denies the Defendant the right to a thorough and sifting cross-examination, because it denies the right of the Defendant to hear names and call surrebuttal witnesses. And at this point in time, the Defendant moves for a mistrial.
“THE COURT: Motion denied.”
“It has long been established that either the state or the defendant has the right to cross-examine the other party’s character witness as to the foundation of his opinion, in order to shed light upon the weight and credibility of his testimony.” Butler v. Hughes, 264 Ala. 532, 535, 88 So.2d 195, 198 (1956). See generally C. Gamble, *626 McElroy’s Alabama Evidence § 26.02(12) (3d ed. 1977). “It is always permissible to test a witness as to his estimate of character. The testimony thus given is for the purpose of letting the jury know on what the witness bases his estimate of character.” Blankenship v. State, 27 Ala.App. 140, 168 So. 193, 193, cert. denied, 232 Ala. 356, 168 So. 194 (1936). “Since character manifests itself by the manner in which one is esteemed, spoken of, or received in society, it is always permissible, on cross-examination, to ascertain the extent of the witness’ information, and the data from which he draws his conclusion.” Butler v. Hughes, 264 Ala. at 535, 88 So.2d at 198.
Wigmore concludes that a witness testifying to another’s bad reputation may be required to “specify the particular rumors of misconduct, or statements of individuals, that have led him to assert the existence of the bad reputation.” 4 Wig-more, Evidence § 1111 at 245 (Chadbourn rev.1972) (emphasis in original):
“If a witness to another’s bad reputation is speaking from a veritable knowledge of such a repute, he ought to be able to specify some of the rumored misconduct or some of the individual opinions that have gone to form that reputation. If he cannot do this, his assertion may be doubted:
“Braddon’s Trial, 9 How.St.Tr. 1127, 1170 (1684): Witness: ‘The Wednesday and Thursday both, it was the common talk of the town all day long.’ Withins, J.: ‘Name one that spake it to you.’ Witness: ‘I cannot; it was the women as they came in and out of my shop, and as they went up and down the town.’ Counsel, Mr. Wallop: ‘My lord, we leave it with your lordship and the jury; he swears he then heard such a report.’ Withins, J.: ‘Do you believe that this man can speak truth when he says it was reported all about their town for two days before it was done, and yet cannot name one person that spake it?’ Witness: ‘I keep a public shop, and do not take notice of every one that comes in and out, to remember particularly.’ Withins, J.: ‘You heard it up and down the town, you say; surely you might remember somebody.’
[[Image here]]
“... [T]he reasons above quoted are universally accepted (except by a few courts which do not appreciate the reasoning). On cross-examination of the impeaching witness he may be asked as to the specific persons who have spoken against the impeached witness, and (usually) as to what misconduct they specified.” Id. at 245-46.
One exception to Wigmore’s rule requiring disclosure of the sources of an impeaching witness’s statement is the situation present here: the privilege against disclosing “the identity of persons supplying the government with information concerning the commission of crimes.” 8 Wigmore, Evidence § 2374(f) at 761 (McNaughton rev.1961) (emphasis in original). See generally Parsons v. State, 251 Ala. 467, 473, 38 So.2d 209, 213 (1948).
The case of Riley v. State, 40 Okl.Cr. 380, 269 P. 390 (1928), is almost directly on point. There, the following occurred:
“The defendant urges that the court erred in refusing his motion to require the sheriff, John B. Calderhead, to answer the questions that were propounded to him on cross-examination; witness Calderhead having been recalled by the state and asked the following:
“ ‘Q Do you know the general reputation of Harry Riley,, in the community in which he lived, before this raid was made? A. Yes, sir.
“ ‘Q Was that good or bad? A. It was bad.’
“On cross-examination the following questions were propounded to the witness:
“ ‘Q Who did you ever hear say his reputation was bad? A. Brown Moore [defense counsel], you have heard me say many times I would not tell names of people who turned these things in to me. I won’t tell it. Neighbors made complaint is the reason I made this raid.
“ ‘Q I want to know who they are. You wouldn’t say the man’s reputation *627 was bad, without telling who said it was?
A. I heard it from his neighbors.
“ ‘Q You heard these witnesses testify that his reputation was good? A. No, sir; I did not hear them.
“ ‘Q You can’t name any one who said his reputation was bad? A. Yes, sir; but I won’t do it.
“ ‘By Mr. Moore: We ask that the witness be required to answer the question.
“ ‘By Mr. Suman: I think that an officer who has received information—that he should not be required to disclose who they were.
“ ‘By the Court: Request refused; exceptions allowed.’ ” 40 OkLCr. at 381, 269 P. at 390.
The Oklahoma court reversed, holding that the trial court’s failure to require disclosure denied the accused the right of confrontation and cross-examination. Riley v. State, 40 Okl.Cr. at 382, 269 P. at 391. Wigmore criticizes the Riley decision as “unsound,” concluding that the privilege for maintaining the confidentiality of government informers “was not called to the [Riley] court’s attention.” 8 Wigmore, Evidence § 2374 at 763 n. 2.
We find Wigmore’s criticism to be valid, and we decline to follow Riley. We hold that the trial court did not err in denying the motion to compel Ford to reveal the names of those supplying him with confidential information upon which he based his conclusion that Hyde’s reputation was bad. Ford had a privilege not to reveal the identity of his informers here, see 8 Wigmore, Evidence § 2374, because the informers were not material witnesses on the issue of the defendant’s guilt, see Roviaro v. United States, 353 U.S. 53, 59-61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957).
Moreover, even if the names had been subject to disclosure, the defendant would not have been entitled to “call surre-buttal witnesses,” as he argued at trial. The objective truth or falsity of reports concerning the witness were not subject to further proof because they constituted contradiction on a collateral matter. See generally, C. Gamble, McElroy’s Alabama Evidence § 26.02(19) (3d ed. 1977).
The nondisclosure privilege, however, “applies only to the identity of the informer, and not to his communication as such.” 8 Wigmore, Evidence § 2374 at 765 (emphasis in original).
“Of course, if disclosure of the contents of his statement would tend to disclose the identity of the informer, the communication itself should come within the privilege, but solely to the extent necessary to preserve the informer’s anonymity. Neither the government nor the informer wants the source of the information to be disclosed, but the communication, ... is not a secret_” 8 Wigmore, Evidence § 2374 at 765-66 (emphasis in original) (footnotes omitted).
In the present case, defense counsel’s motion requested that Ford be compelled to (1) name his sources and (2) to “furnish [the defense] a copy of any file for examination that they have that receives information that would be truthful for use of cross-examination.” The first request was properly denied based on the privilege to withhold the names of informers. The second was properly denied because the trial judge was within his discretion in determining that the probative value of the evidence (which may have been contained in the investigative file on Hyde) did not outweigh the interest of the State in not divulging facts learned during a criminal investigation. Compare Assured Investors Life Ins. Co. v. National Union Associates, Inc., 362 So.2d 228, 233 (Ala.1978), with Young v. State, 469 So.2d 683, 688 (Ala.Cr.App.1985).
In Assured Investors, petitioners, who were plaintiffs in a stockholders’ derivative action, sought a writ of mandamus to compel the circuit judge to order pre-trial disclosure of a document in possession of the district attorney. The document was a statement obtained by law enforcement officers, acting within the scope of an ongoing criminal investigation, from a defendant named in the stockholders’ suit. Our Supreme Court rejected the prosecutor’s argument that the statement was privi *628 leged from disclosure. “The executive privilege applicable to information held by the government during an ongoing criminal proceeding is a qualified one.” Assured Investors, 362 So.2d at 233. It held that a trial court must determine
“the proper balance that must be struck between competing fundamental interests. On the one hand, there is the undeniable interest of the executive branch of government in maintaining confidentiality over certain types of information necessary for the performance of its ... duties. On the other hand, there is the unquestionable interest of the litigant in seeking information for the just resolution of the legal dispute.” Id.
Our Supreme Court found that the claim of privilege in Assured Investors, first, had not been properly invoked (under oath or by affidavit), and, second, should yield to the policy of “liberal discovery of all facts needed for a fair determination of the dispute.” Id.
In Young v. State, the accused was tried for a drug offense uncovered by one Car-lisle, an individual under contract with the sheriffs department. On cross-examination of Carlisle, defense counsel sought to “ascertain how many individuals Carlisle was investigating under his contract.” Young v. State, 469 So.2d at 688. The prosecution objected on grounds that the information was privileged. This court held:
“In cases such as the one at bar, the government is entitled to protection when the probative value of the evidence is outweighed by the risks of exposing incomplete investigations. The information elicited from the witness Carlisle exposed his potential bias to the jury. The trial judge acted well within his discretion in sustaining the prosecutor’s objections.” 469 So.2d at 688.
In our judgment, the present case is more like Young than like Assured Investors. First, the claim of privilege was properly invoked under oath here. Second, and more importantly, upholding the privilege here did not result in concealing information directly relevant to the triable issue: whether the defendant committed a theft (or, as in Assured Investors, whether the defendant had engaged in corporate mismanagement and fraud). Upholding the privilege here had the effect, as in Young, only of shielding information relevant to a witness’s credibility. In our judgment “the information elicited from the witness [Ford] exposed his potential bias to the jury” and the trial court acted within his discretion in failing to order complete disclosure of the basis for his testimony about Hyde's reputation.
II
Next the defendant argues that the State failed to prove his guilt beyond a reasonable doubt because of discrepancies in the victim’s testimony regarding the value of the boat motor allegedly stolen.
The defendant was convicted pursuant to § 13A-8-4(a), which proscribes the theft of property “which exceeds $100.00 in value but does not exceed $1,000.00 in value.” The victim testified that the motor was valued at “around $700,” “about $750,” and later, that he “had been offered $900” for it. Even with these discrepancies, every estimate of the value of the property fell within the statutory range for second degree theft. The conflict in the victim’s testimony was, therefore, immaterial. Moreover, had there been testimony putting the value outside the statutory range, such a conflict would, in light of evidence establishing a prima facie case, have presented a jury question regarding value. Olds v. State, 484 So.2d 517, 519 (Ala.Cr.App.1985).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.