ON RETURN TO REMAND

BOWEN, Presiding Judge.
On original submission, this Court remanded this cause to the trial court with directions that the trial judge conduct a hearing to *165 determine whether the appellant established a prima facie case of racial discrimination under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 626 So.2d 609 (Ala.1987), in light of the Alabama Supreme Court’s holding in Ex parte Thomas,[1] 659 So.2d 3 (Ala. 1994).
On return to remand, the trial court filed a written order, the significant portion of which is as follows:
“The Court has considered the arguments of the attorneys, the brief filed, and the transcript of the trial of this ease. The Court has also reviewed the biographical information of the venire members contained in the Master Jury Venire List for September 20, 1993 and the responses of the venire members at their initial qualification. The Court further notes that it served as the trial court in this cause and that the Court personally observed and heard the proceedings had and done in the trial of this case and has consulted its own notes and recollection of said proceedings.
“The Court finds that the record reflects that this case was tried by jury beginning September 20, 1993. A jury was empaneled on that day after voir dire by the State and the Defendant. The jury was struck from a list of fifty-four (54) persons, nine (9) of whom were black. The State used seven (7) of its twenty-one (21) strikes against blacks, the Defendant struck one (1) black, and one (1) black male served on the jury.
“The Court has reviewed the cases listed above, along with the cases cited by counsel and has evaluated the evidence in this cause in light of the nine (9) factors set out in Ex parte Branch, supra; the Court has further considered all circumstances surrounding this matter alluded to by both the Defendant and the State.
“The Court makes the following findings with respect to each factor listed in Ex parte Branch.
“1. The Court finds that the Defendant has failed to show that the struck black jurors shared only their race as a common characteristic. In making this conclusion, the Court has examined the voir dire conducted in this case, noted the responses of the jurors, and has further examined the master jury list for the week of September 20, 1993 at which the said jurors were initially qualified.
“2. The Court finds that there is no pattern of strikes against black jurors on this particular venire. The result of the State’s strikes would have left two (2) blacks on the trial jury. It has been held, by way of illustration, that there is no evidence of a pattern of strikes used to challenge black jurors when, for example, having a total of six (6) peremptory challenges, the State used two (2) to strike black jurors and four (4) to strike white jurors and there were blacks remaining on the venire. Ex parte Branch, supra at 623.
“3. The Court finds, based on its observations from the bench for the past six (6) years, that the Lawrence County District Attorney’s Office nor the particular prosecutors in this ease have a history of practicing racial discrimination in jury selections.
“4. The Court finds that the State engaged in extensive voir dire with the veni-re, and the Court finds that the voir dire and the responses thereto refute any possible inference of discriminatory purpose. See Batson v. Kentucky, 476 U.S. at 96-97, 106 S.Ct. at 1722-1723.
“5. The Court finds that the voir dire questions directed to all the jurors are extensive, meaningful and case related.
“6. The Court finds there [was] no disparate treatment of members of the jury venire with the same characteristic, or who answered a question in the same or similar manner.
“7. The Court finds that there was no disparate examination of members of the venire.
*166 “8. The Court does not find circumstantial evidence of intent of discrimination. Most of the strikes exercised by the State were against white persons.
“9. The Court finds that the State’s strikes would have left two (2) of nine (9) jurors on the trial jury (absent the action of the Defendant in striking one (1) black.) The Court cannot say, under all the facts and circumstances in this case, that such a circumstance is indicative of racial discrimination on the part of the State in the selection of the jury.
“10. The Court further notes that the victim’s widow, Glenda Reynolds, was present in court during the trial of the case and specifically [sat] at counsel table and appeared to participate with the State in the actual selection of the jury. The Court further notes that Glenda Reynolds is a black female employed by the Lawrence County Board of Education as a teacher in the school system.
“The Court therefore finds that the Appellant, Earnest McClain, has failed to establish a prima facie case of racial discrimination exercised by the State in the selection of the jury which heard and determined his guilt in this cause.”
Based on these findings, it does not appear that the trial court improperly relied on the principle rejected in Ex parte Thomas that when the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. See also Ex parte McNair, 653 So.2d 353, 355-56 (Ala. 1994).
In determining whether the challenging party has established a prima facie case of racial discrimination, “the court is to consider ‘all relevant circumstances’ which could lead to an inference of discrimination.” Ex parte Branch, 526 So.2d 609, 622 (Ala.1987). In Ex parte Branch, 526 So.2d at 622-23, the Alabama Supreme Court identified a number of factors that the challenging party might use to establish a prima facie case of discrimination. This list of factors, while “not exclusive” of the means by which a challenging party may establish a prima facie case, Harrell v. State, 555 So.2d 263, 267 (Ala.1989), is as follows:
1. “Evidence that the ‘jurors in question share[d] only this one characteristic— their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.’” Ex parte Branch, 526 So.2d at 622.
2. “A pattern of strikes against [jurors of a certain race] on a particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors.” Id. at 623.
3. “The past conduct of the [challenged party’s] attorney in using peremptory challenges to strike all [jurors of a particular race] from the jury venire.” Id.
4. “The type and manner of the [challenged party’s] attorney’s questions and statements during voir dire, including nothing more than desultory voir dire.” Id.
5. “The type and manner of questions directed to the challenged juror, including a lack of questions or a lack of meaningful questions.” Id.
6. “Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner.” Id.
7. “Disparate examination of members of the venire,” such as asking only jurors of a particular race “a question designed to provoke a certain response” likely to disqualify those jurors. Id.
8. “Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike [members of a particular race] from the jury.” Id.
9. “The [challenged party] used peremptory challenges to dismiss all or most [jurors of a particular race].” Id.
The trial court has complied with the requirements of Ex parte Branch. “A circuit court’s ruling on a Batson objection is entitled to great deference, and we will reverse a circuit court’s Batson findings only if they *167 are clearly erroneous.” Ex parte Thomas, 659 So.2d at 3. In view of all the circumstances set forth by the trial court in its written order and the court’s obvious consideration of the totality of those circumstances in determining that the appellant had not established a prima facie case of racial discrimination, we cannot say that the trial court’s ruling was clearly erroneous. See Ex parte McNair, 653 So.2d at 356. Consequently, the judgment of the circuit court is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.

. The Alabama Supreme Court originally issued an opinion in Ex parte Thomas on May 20, 1994. On September 2, 1994, the Supreme Court withdrew the May 20, 1994, opinion and substituted another one; the relevant substance of the opinion remained the same.