The appellant, Theodory Julius Hemphill, was convicted of distribution of crack cocaine, a violation of § 13A-12-211, Ala. Code 1975. His two-year sentence was suspended, but he was sentenced to 10 years' imprisonment pursuant to §§ 13A-12-250
and -270, Ala. Code 1975. He raises three issues.
 I
The appellant contends that the trial court erred by refusing to give the following charge to the jury: "Defendant who acts as the buyer's agent (also known as procuring agent) is not guilty of unlawfully 'selling' controlled substances." The appellant also contends that the trial court erred by refusing to present a special verdict form to the jury stating the following or containing similar language: "We the jury find the defendant guilty of distribution of controlled substances by furnishing or delivering." The appellant asserts that this verdict form has been used in criminal cases in the Jefferson Circuit Court and that pursuant to Ex parte Mutrie,658 So.2d 347 (Ala. 1993), the use of this verdict form does not permit any sentence enhancement under §§ 13A-12-250 and -270, Ala. Code 1975, because Mutrie held that these enhancement provisions could be applied only to a conviction for the sale of a controlled substance.
 "A trial court has broad discretion in formulating its jury instructions, providing they are an accurate reflection of the law and facts of the case. Coon v. State, 494 So.2d 184 (Ala.Cr.App. 1986). When requested charges are either fairly and substantially covered by the trial judge's oral charge or are confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law, the trial judge may properly refuse to give such charges. Ex parte Wilhite, 485 So.2d 787 (Ala. 1986)."
Ward v. State, 610 So.2d 1190, 1194 (Ala.Cr.App. 1992) (emphasis added); see Fox v. State, 659 So.2d 210 (Ala.Cr.App. 1994) ("The court committed no error in refusing to instruct the jury on criminally negligent homicide because the evidence did not support such an instruction."); Geckles v. State,440 So.2d 1189, 1191 (Ala.Cr.App. 1983) ("Where there is no evidence to support the defense of entrapment, it is not error to refuse to charge the jury on the defense of entrapment.").
The trial court correctly ruled that the evidence presented in this case does not support this instruction. Officer Bobby H. Butler testified that he was assigned to the Birmingham Police Department's undercover narcotics buying operation as an undercover *Page 1022 
operator. His function was to try to purchase narcotics from individuals selling drugs in Birmingham. On the date of the incident involving the appellant, Butler drove to the end of a dead-end street where he had made drug buys before. He observed the appellant and a codefendant "hanging out in front of the apartments" on the dead-end street. R. 21. Butler testified that "I looked over at them. As soon as they saw me they came to my car and asked me what I was looking for. . . . I told them a 20-cent piece, which is slang for $20 worth of crack cocaine." R. 22, 26. The two instructed Butler to follow them as they walked toward apartment number 6440. The appellant went inside apartment 6440 but the codefendant instructed Butler to follow him to the rear of apartment 6440. The codefendant told Butler to park "around back" in the future to avoid a possible "hassle" by the police. This was a blatant reference to any future occasions when Butler seeks to buy drugs. According to Butler, the appellant came out of apartment 6440 and gave Butler a piece of crack cocaine. Butler paid the appellant with a marked $20 bill. Butler went back to his car and initiated arrest proceedings. Butler arrested the appellant inside apartment 6440 a few minutes later. Butler stated that he did not find the marked $20 bill on the appellant at the time of the arrest and that no one else was inside apartment 6440 when Butler arrived.
The appellant testified that on the day of his arrest he was visiting his cousin, who lives in apartment 6438. He stated that he was "hanging out" on the porch with the codefendant when Butler drove up and held up 10 fingers. This gesture, according to the appellant, indicated that Butler wanted to buy $10 worth of some drug. The appellant "figured" Butler wanted crack cocaine because the appellant had been at his cousin's house enough to know what was "going on." The appellant testified that he knew that a man called "Detroit" sold drugs out of apartment 6440. The appellant stated he went to apartment 6440 and was given an envelope by Detroit to deliver to Butler. The appellant delivered the envelope to Butler and Butler gave the appellant $20 dollars, which the appellant says he immediately delivered to Detroit. According to the appellant, he received nothing for his participation in the transaction. He stated that he was alone at the time of his arrest because everyone else, including Detroit, had run away before the police entered apartment 6440.
Distribution of cocaine includes selling, furnishing, or delivering cocaine. § 13A-12-211(a), Ala. Code 1975. Ex parteMutrie, 658 So.2d 347 (Ala. 1993), held that a sentence could be enhanced under § 13A-12-250 and -270 only where a sale of illegal drugs is the basis for the conviction. Mutrie
specifically prohibits enhancement where the defendant is guilty of furnishing a controlled substance in the capacity of the buyer's agent.
Butler's testimony clearly established that the appellant was involved in a sale of cocaine. The appellant failed to establish that Butler's initial contact placed the appellant in the role of Butler's "procuring agent." All the testimony, including the appellant's, regarding the appellant's actions were consistent with his being the seller's agent. The evidence did not support the charge requested by the appellant.
The appellant was outside the apartment used by Detroit to sell cocaine when Butler drove up. The appellant was with the codefendant, whose behavior, according to testimony, indicated that he was in the business of selling cocaine at this location. The appellant testified that he knew that Butler wanted to buy drugs as soon as he drove up. The appellant accompanied the codefendant to Butler's car. When the codefendant determined exactly the amount of drugs Butler wanted, the appellant, without prompting from any source, went inside apartment 6440 where he said Detroit gave him an envelope to give to Butler in exchange for $20. Meanwhile, the codefendant accompanied Butler to a safe location behind apartment 6440 to wait on the appellant to bring the drugs. The appellant joined them, bringing with him the envelope containing the cocaine, and the exchange was completed with Butler. Within moments of this transaction, the appellant was arrested in the apartment from which the appellant acknowledged drugs were sold. *Page 1023 
No evidence was presented at trial to support the inference that the appellant was working as Butler's "procuring agent." The fact that Butler arrived on the scene, and according to the appellant, gestured that he wanted buy drugs does not mandate defining the appellant's participation in the transaction as merely a "procuring agent." The appellant admitted that he was present in a location known for selling drugs, he voluntarily approached Butler, he participated in taking Butler's drug order, he took Butler's money for the drugs to "Detroit," and he delivered drugs to Butler. At the very least, under the theory of accomplice liability, the appellant is guilty of selling drugs to Butler. As Ex parte Mutrie, supra, held, the enhancement statutes §§ 13A-12-250 and -270, "do not apply to convictions for 'distribution' of a controlled substance, in violation of § 13A-12-211, unless the defendant is found to have sold, or to have collaborated or associated with theseller to sell, a controlled substance." (Emphasis added.) The evidence, when construed in a light most favorable to the appellant, indicates that the appellant "associated" with the seller to sell a controlled substance. The trial court correctly refused to charge the jury as requested.
 II
The appellant contends that the trial court erred in ruling that he had not presented a prima facie case of racial and gender discrimination by the State in its use of peremptory strikes. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), and J.E.B. v. Alabama, ___ U.S. ___,114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Batson requires an inference of purposeful or intentional racial or gender discrimination by the State in the selection of the jury. Batson, 476 U.S. at 96,87, 106 S.Ct. at 1723, 1718.
The appellant made the following objection:
 "MR. TUMLIN [defense counsel]: Your Honor, we would like to make a Batson motion. I think it probably speaks for both parties. That we do have two defendants that are of a minority, that is, they are both black. That we have had blacks that were stuck by preemptory challenges or strikes and that they are such a nature — preemptory strikes are such that prejudice or bias can easily by used to strike them. It would appear that out of the 12 strikes if we are correct that 6 of the State's 12 strikes were indeed blacks and that those 6 strikes were black females. So we would say that there [have] been strikes and it shows a pattern and a discrimination toward the black members of the venire.
 "In particular, we would also add that there's a strike or bias and pattern of striking against black females, with emphasis on the females.
 "So we believe that that in itself, Your Honor, shows that there is a basis for explanation in the case as to the reasons for the pattern of their strikes.
". . . .
 "THE COURT: Well for the record, my records reflect there are 15 blacks on the panel. State struck six, the [co-]defendant Mr. Hubbard struck one, and Mr. Hemphill struck one also, leaving seven black jurors on the panel.
 "I'm going to deny the motion at this time. Court doesn't feel that the defendants have made out a prima facie case of discriminatory use of those strikes."
R. 11-12.
"A circuit court's ruling on a Batson objection is entitled to great deference, and we will reverse a circuit court'sBatson findings only if they are clearly erroneous." McClain v.State, 659 So.2d 164 (Ala.Cr.App. 1994). We find no error with the trial court's ruling on the appellant's Batson objection.
The sole basis of the appellant's gender objection is that the State used 6 of 12 peremptory strikes to remove black women from the venire. The trial court did not rule on the appellant's gender objection and the appellant did not object to this failure. "In the absence of a ruling, a request for a ruling or objection to the court's failure to rule, there is nothing preserved for appellate review." Porter v. State,654 So.2d 63 (Ala.Cr.App. 1994), cert. denied, 654 So.2d 63 (Ala. 1995). *Page 1024 
However, the appellant supports his Batson objection by arguing that the use of 6 of 12 peremptory strikes "in itself" establishes a pattern of discriminatory striking of jurors and constitutes a prima facie showing of discrimination, shifting the burden to the State to offer reasons for the strikes. Exparte Thomas, 659 So.2d 3 (Ala. 1994), restates the principle that a perceivable pattern of strikes against minorities is evidence of discrimination of the kind that was disapproved in both Ex parte Branch, 526 So.2d 609 (Ala. 1987), and Batson. Exparte Thomas, 659 So.2d at 4. Failing to supply the trial court with any additional support for his motion, the appellant did not persuade the trial court that the State had engaged in a "pattern" of discriminatory striking of jurors as the court found the State had in Thomas. In Thomas the prosecution used 9 of 10 strikes to remove blacks from the venire. There is nothing in the record, i.e., there is no voir dire in the record, to persuade this court that the trial court's ruling on the appellant's Batson motion was clearly erroneous.
 III
The appellant alleges that the following comment by Officer Butler was unresponsive and prejudicial because, he says, it constituted inadmissible evidence of prior offenses.
 "Q. [The prosecutor]: Tell the ladies and gentlemen what happened [the day of the incident] in the 6400 block of Kentucky Avenue.
 "A. The 6400 block of Kentucky Avenue is a dead end street. Kentucky Avenue dead-ends in the 6400 block.
 "I pulled down to the dead-end where I made a buy before and would make subsequent buys."
R. 20.
This was not a comment on the appellant's prior crimes. There was no reference to the appellant. Butler was explaining how the "Phoenix project," an undercover anti-narcotics task force, operated. Furthermore, the appellant did not object to a similar reference by Butler later in his testimony when he stated: "I pulled up right here, which is where I pulled up before." R. 23. "Any error in admitting the original statement by Officer [Butler], was cured when the same evidence was later elicited . . . and permitted to remain in the record without objection." Childress v. City of Huntsville, 459 So.2d 1008,1011-12 (Ala.Crim.App. 1984).
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.