[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1216 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1217 
Vance Dewayne Harris was tried by a jury and found guilty of two counts of distribution of a controlled substance, one count of possession of cocaine, and one count of attempted distribution of a controlled substance, See § 13A-12-211, 13A-12-212, and §13A-12-203, Ala. Code 1975. The trial judge held that possession of cocaine was a lesser included offense to the attempted distribution and charge ordered that the verdict as to possession of cocaine be set aside. Harris was then adjudged guilty of two counts of distribution of a controlled substance and one count of attempted distribution.
Harris was sentenced to serve two years' imprisonment on each count of distribution of a controlled substance, and these two sentences were to run concurrently. He was sentenced to serve five years for attempted distribution, and this sentence was to run consecutively with the two-year sentences for distribution. In addition, pursuant to the statutory enhancements for a sale of drugs within three miles of a school and within three miles of a housing project, Harris was sentenced to serve an additional 10 years for each of the three convictions, to be served concurrently, for a total of thirty-seven years' imprisonment. See § 13A-12-250 and § 13A-12-270 Ala. Code 1975. The court also ordered him to pay court costs, a $1000 fine under the Drug Demand Reduction Assessment, and $50 for a victim's compensation assessment. This appeal follows.
 I.
Harris argues that the trial court committed reversible error by preempting his ability to go forward with entrapment as a theory of defense and further by refusing to instruct the jury on entrapment. Harris argues that from the outset the trial court would not allow him to present the defense of entrapment.
The record does not support his argument. The defense of entrapment is generally not available to a defendant who denies the act for which he was indicted. Lambeth v. State, 562 So.2d 575,578 (Ala. 1990). However, "when the defendant chooses not to testify, no evidence `inconsistent with the defense' is introduced." Young_v. State, 469 So.2d 683, 690 (Ala.Cr.App. 1985). "`Further, a plea of not guilty is not repugnant to the defense of entrapment.'" Young, 469 So.2d at 690 (quoting Jacksonv. State, 384 So.2d 134 (Ala.Cr.App. 1979)). Even if there is not a special *Page 1218 
plea entered by the defendant on entrapment, the defense may present other evidence of entrapment. See Young, 469 So.2d at 690.
"`Entrapment occurs when state officers or persons under their control incite, induce, lure, or instigate a person into committing a criminal offense, which that person would not have otherwise committed, and had no intention of committing.'" Wrightv. State, 494 So.2d 936, 938 (Ala.Cr.App. 1986) (quoting Geckles v.State, 440 So.2d 1189, 1191 (Ala.Cr.App. 1983)). "When a defendant raises an entrapment defense, he must initially come forward with evidence that the governmental conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." Lambeth, 562 So.2d at 578.; See Pierce v. United States, 414 F.2d 163, 168 (5th Cir.), cert. denied 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). "Once the defendant has carried this burden, the prosecution must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime charged." Lambeth, 562 So.2d at 578; See UnitedStates v. Gomez-Rojas, 507 F.2d 1213 (5th Cir.), cert. denied,423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).
"`Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by the one who had the criminal intent.'"Wright v. State, 494 So.2d 936, 939 (Ala.Cr.App. 1986) (quotingJackson v. State, 384 So.2d 134, 139 (Ala.Cr.App. 1979)).
In this case, on three different occasions the judge discussed the entrapment issue. The initial discussion took place outside the presence of the jury during the presentation of the State's case. The prosecutor inquired whether the court was going to allow the defendant to proceed on a defense of entrapment, and if so, whether the court was going give a charge on that defense.
The court replied:
 "Well, I think the way I'd anticipate we would deal with that is that at the end of the State's case-in-chief, if it looks like that issue is going to be raised, we can go ahead and probably begin some discussion of it at that point. I'm not sure I could give a definitive ruling until after the defendant rests because I don't know what's coming from the defendant. But at some point, obviously, we'll discuss that. If it looks like we are going to get into a disagreement or dispute about whether that defense can go to the jury, then I will end up having to make a ruling, particularly if he's going to request one or more instructions regarding entrapment."
(R. 86-87.) The court also added:
 "[At] the end of his case, if he has gone into that issue or tried to raise it, then either by way of rebuttal or by way of us having a conference, perhaps, before you [the State] go into rebuttal we can address whether or not the evidence that has been presented appears sufficient to at least make that a jury issue, and if so, you would have a chance to offer rebuttal testimony regarding that matter."
(R. 87-88.)
The next discussion occurred when defendant made a motion for judgment of acquittal at the close of the State's case. The court stated:
 ". . . As to the defense of entrapment, I don't know what your plans are . . . but I would say at this point, based on what I have heard, and I have done some reading during the lunch hour, that I *Page 1219 
don't at this point, based on what evidence has come out in the State's case, I don't see that in this case there's been a showing that the defendant was not or did not have a predisposition to commit the crime for which he is charged in this case. There may be something else that will — some other evidence that comes down the pike that's going to convince me otherwise, but based on what I have heard to this point, I would not be willing to say certainly as a matter of law that entrapment has been proved, nor would I be willing to say that there is sufficient evidence from which a jury could even reasonably infer that there was entrapment as that defense is defined by law. So at this point, unless something further develops. The jury will not be instructed on entrapment, will not be allowed to consider entrapment, and that's the view I take at this point. And y'all may put your heads together and tell me, no, we'd just as soon you go ahead and submit it and if you tell me that I will do it if it's a joint request."
(R. 213-14.)
Before the parties began closing arguments, the court held a charge conference to discuss the issue of entrapment. (R. 228.)
The court conveyed that it had reviewed the caselaw and that it was still of the opinion that the entrapment defense did not apply in this case. (R. 228.) Furthermore, the trial judge stated, "That there's just no evidence from which a jury could reasonably conclude that there was no predisposition on the defendant's part to commit any of the offense with which he is charged." (R. 228.) In fact, the evidence at trial showed that Harris did have a predisposition to commit the crime. The first initial contact by Harris and law enforcement came when a confidential informant, in the presence of an officer, telephoned Harris and arranged a meeting for the confidential informant to purchase a quantity of cocaine. (R. 51.) Later, the officer paged Harris himself and made two additional buys from Harris. The officer attempted to make a third buy, and Harris warned him that he was going to bring a gun and that he would kill the officer if the police jumped out. (R. 56-57, 75-82, 94.) This is sufficient evidence of the Harris's predisposition to commit the crime.
In addition, the court reasoned that if he allowed the entrapment defense in this case that he would be required to allow the defense in any case where there has been a sale or an alleged sale of a controlled substance. (R. 228.) The trial judge reiterated that he did not want to confuse the jury by allowing the defense to use entrapment. (R. 228-29.)
Clearly from the record, the trial judge provided Harris with the opportunity to present evidence to support his defense of entrapment. In arguing entrapment, Harris had to rely solely on the testimony of the State's witnesses because his only witness basically testified that the car and the motorcycle located at Harris's residence and associated with the drug deals were driven by many people other than Harris. (R. 220-22.) We find no evidence of entrapment. Where there is no evidence of entrapment, the issue should not be presented to the jury. See Friedman v.State, 654 So.2d 50, 53 (Ala.Cr.App. 1994); See also Ruggs v.State, 601 So.2d 508 (Ala.Cr.App. 1992).
Harris additionally claims that the trial court erred in not giving his requested jury instruction on entrapment. "`A trial court has broad discretion in formulating its jury instructions, providing they are an accurate refection of the law and facts of the case.'" Hemphill v. State, 669 So.2d 1020, 1021 (Ala.Cr.App. 1995) (quoting Coon v. State, *Page 1220 494 So.2d 184 (Ala.Cr.App. 1986)). The trial judge may refuse to give a requested jury charge when the charge is either fairly and substantially covered by the trial judge's oral charge or is confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law. See Hemphill, 669 So.2d at 1021; See also Ex parte Wilhite, 485 So.2d 787 (Ala. 1986).
Because there was no evidence to support an entrapment defense, the trial court properly denied the defense's request for a jury charge on that defense. Furthermore, the court found that no evidence had been presented to support a defense of entrapment and thus, that to allow the charge would confuse the jury. (R. 228.) Where there is no evidence to support the defense of entrapment, it is not error to refuse a jury charge on the defense. See Friedman, 654 So.2d at 53; See also Ruggs v. State,601 So.2d 508 (Ala.Cr.App. 1992); Geckles v. State, 440 So.2d 1189
(Ala.Cr.App. 1983).
 II.
Second, Harris contends that the trial court committed reversible error in enhancing his sentence under § 13A-12-250 and § 13A-12-270, Ala. Code 1975, because, he says, the State failed to prove that the sales occurred within three miles of a school and a public housing project. Specifically, he argues that an unverified, unauthenticated map admitted into evidence and the testimony of two police officers were insufficient to support the enhancements. Harris failed to object at trial, and, therefore, failed to preserve this issue for review. Jordan v. State,574 So.2d 1024, 1025 (Ala.Cr.App. 1993).
However, even if the issue had been properly preserved for review, there was no error. For purposes of enhancing a defendant's sentence, the State must prove by a preponderance of the evidence that the sale occurred within three miles of a school or a housing project. See Germany v. State, 630 So.2d 132, 136
(Ala.Cr.App. 1993).
 "A `preponderance of evidence' is defined as `evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not.' Black's Law Dictionary 1182 (6th ed. 1990). For purposes of applying § 13A-12-250, Ala. Code 1975, the trial court may not take judicial notice that a sale of a controlled substance occurred within a three-mile radius of a school. Brock v. State, 697 So.2d 1197
(Ala.Cr.App. 1996); Cunny v. State, 629 So.2d 693
(Ala.Cr.App.), appeal after remand, 629 So.2d 697
(Ala.Cr.App. 1993). However, testimony from an officer who is familiar with the location of the sale is sufficient to establish that the sale occurred within three miles of a school. See Anderson v. State, 641 So.2d 1299 (Ala.Cr.App. 1994); Grider v. State, 600 So.2d 401 (Ala.Cr.App.), cert. denied, 600 So.2d 404 (Ala. 1992). Moreover, it is not necessary that the officer testify about a `specific measurement' of the distance from the site of the sale to the nearest school for the enhancement provision to apply. See Fletcher v. State, 675 So.2d 55, 56-57 (Ala.Cr.App. 1995), cert. denied, 675 So.2d 58 (Ala. 1996). `Once the state has met its burden of proof, it would be up to the defendant to offer any evidence in dispute. The failure to offer evidence weakens the defendant's position.' Hester v. State, 608 So.2d 420, 422 (Ala.Cr.App. 1992)."
Wild v. State, 761 So.2d 261 (Ala.Cr.App. 1999). *Page 1221 
In this case, the State presented a certified color-coded map prepared by the city planning department, which represented the locations that were within three miles of a school or a housing project. (R. 272-74.) This map was used in facilitating the testimony of Officer Jamie Jarrell, who actually made the two controlled buys and the attempted buy of drugs in this case. Officer Jarrell pointed to the areas on the map where the two buys and the attempted buy occurred. (R. 273-76.) On cross-examination, the officer stated that he was not aware of any point within the city limits of Decatur that were not within three miles of public school or a housing project. (R. 276-77.) In addition, another officer testified to exactly which schools and housing projects were located within three miles of each buy and the attempted buy. (R. 278-80.) Harris did not offer any evidence to dispute the officers' testimony. Furthermore, Harris moved to have the map copied and made a part of the record (R. 282-83), and he now attempts to object to its admission.
The State sufficiently proved that the sale occurred within three miles of a school. A certified map that depicted which areas were located within three miles of a school or housing was presented to the court. The testimony of two officers supported the evidence indicating that the sales and the attempted sale occurred within three miles of a school and housing project. SeeWild v. State, 761 So.2d 261 (Ala.Cr.App. 1999); see also,Walker v. State, 594 So.2d 722, 725 (Ala.Cr.App. 1992). Furthermore, after the State presented evidence that the offenses occurred within three miles of a school and a housing project, Harris did not offer any conflicting evidence. Therefore, the evidence sufficiently proved that the sales and the attempted sale occurred within three miles of a school and a housing project. Anderson v. State, 641 So.2d 1299 (Ala.Cr.App. 1994).
 III.
Harris contends that the trial court abused its discretion by arbitrarily denying his request for youthful-offender status. Specifically, he argues that the trial judge denied youthful-offender status based solely on the charges themselves, without consideration of the particular facts involved. Harris asserts that at the time of the petition for youthful-offender status, he was eighteen years old, had no prior convictions and no charges were pending against him. However, there is no indication in the record that Harris objected to the trial court's denial of youthful-offender status. Therefore, this issue was not properly preserved for our review. See Withee v. State, 728 So.2d 684, 690
(Ala.Cr.App. 1998) (citing Ford v. State, 645 So.2d 317, 318
(Ala.Cr.App. 1994)).
Even if the issue had been preserved for review, Harris's argument is without merit. "`The trial court has almost absolute discretion in ruling on applications for youthful offender status, and the actions of the trial judge are presumptively correct in the absence of a showing to the contrary.'" Mansel v. State,716 So.2d 234, 235 (Ala.Cr.App. 1997) (quoting Carden v. State621 So.2d 342, 345 (Ala.Cr.App. 1992)).
 "`"When deciding whether to grant youthful offender status, it is expected that the nature of the crime charged, along with prior convictions of the defendant, will be considered, as well as any other matters deemed relevant by the court. No prescribed format is required. Neither is the trial court required to articulated on the record the reasons for denying youthful offender status to a defendant."'" *Page 1222 
Mansel, 716 So.2d at 235 (quoting Self v. State, 512 So.2d 811,814 (Ala.Cr.App. 1987)). "`It is sufficient if the order of denial reflects that some investigation, examination, or inquiry was conducted before the application for youthful offender status was denied.'" Mansel, 716 So.2d at 235 (quoting Talley v. State,504 So.2d 741, 742 (Ala.Cr.App. 1987)). Furthermore, "where it does not affirmatively appear that the trial court's decision was arbitrary or that it was made without any examination or investigation, there is no basis for overturning the trial court's decision". Wilson v. State, 563 So.2d 11, 12 (Ala.Cr.App. 1989).
The record indicates that on October 6, 1998, the trial judge denied youthful-offender status, after considering the youthful-offender investigation report, the severity of the crime charged, the fact situation upon which the charges against Harris were based, the existence or non existence of other pending charges against Harris, Harris's record of prior convictions and encounters with law enforcement authorities, and his likely success as a probationer. (C. 37.) It appears from the record that the trial court's order denying youthful-offender status sufficiently reflects that some investigation, examination, or inquiry was conducted before the application for youthful-offender status was denied (C. 37); and therefore, he did not abuse his "almost absolute discretion." Mansel, 716 So.2d at 235.
 IV.
Harris argues that the drug-enhancement statute prescribing an additional penalty for an unlawful sale of a controlled substance within three miles of a public housing project, §13A-12-270 Ala. Code 1975, is unconstitutional on the grounds that it violates due process, equal protection, and the doctrine of separation of powers. Harris did not object on these grounds at trial — he raised only the broad, nonspecific ground of equal protection in his motion for a new trial. An issue that was not timely raised at trial will not be considered on appeal. "Even constitutional issues must first be correctly raised in the trial court before they will be considered on appeal." Hansen v. State,598 So.2d 1 (Ala.Cr.App. 1991) (citing Cagle v. State, 504 So.2d 1225
(Ala.Cr.App. 1987)). See also, Barrett v. State, 705 So.2d 529,533 (Ala.Cr.App. 1996). Therefore, the issue whether §13A-12-270 violates due process and separation-of-powers doctrine was not preserved for our review.
Nevertheless, Harris argues that application of the enhancement statute to Harris's sentence was not part of the trial process and that his failure to object at trial does not procedurally bar him from raising the issue. In addition, he argues that he was not informed of the State's intention to proceed with the enhancement issue until sentencing; therefore, he says, he objected on constitutional grounds at the first opportunity, which was post judgment.
This court has held that due process is served as long as the defendant receives actual notice of the State's intent to apply the enhancement statute even if the State fails to supply the defendant with formal notice of its intent to seek enhancement of his sentence. See Gandy v. State, 610 So.2d 1242, 1244
(Ala.Cr.App. 1992). See also Nabors v. State, 649 So.2d 1324
(Ala.Cr.App. 1994). Furthermore, the statute does not require that a defendant be given notice. See § 13A-12-270 Ala. Code 1975.
In this case, the record reveals that the trial court adjudicated Harris guilty; the court then asked, "Does the State contend that as to these three offenses for which he stands convicted, that those occurred in a situation where either one or both of the *Page 1223 
three-mile enhancements would apply?" (R. 267.) The State replied that both would apply on all counts. (R. 267.) The court then asked defense counsel if he were prepared to deal with the enhancement issue at the time, and the defense responded that he was not. (R. 267.) The trial court set a sentencing hearing for a later date. (R. 267.) Harris thus received actual notice of the State's intent to invoke the enhancement statutes; such actual notice provided him the opportunity to defend and raise any objections to the application of the statutes to him. See Gandy, 610 So.2d at 1244.
In his motion for a new trial Harris argues that §13A-12-270, Ala. Code 1975, is unconstitutional on the grounds that it violates his equal-protection right. On appeal Harris argues that the equal protection right was violated by virtue of his economic and/or socioeconomic status because he lived in or near a public housing project at the time of his conviction and his residence was thus a factor in his penalty. He further argues that the police are allowed to orchestrate sales of controlled substance, by geographic areas and that they can thereby manipulate the sentencing of defendants.
Although Harris argues that the sentence enhancement violates his equal protection right, this issue was not preserved for review. Harris failed to object and to receive an adverse ruling at the sentencing hearing, and his subsequent raising of this issue in a motion for a new trial will not preserve it. SeePowell v. State, 608 So.2d 411, 418 (Ala.Cr.App. 1992) (citingTraywick v. State, 431 So.2d 574 (Ala.Cr.App. 1983)).
 V.
The trial judge in sentencing Harris made the following comments:
 "Your attorney asked me to give you a chance, and I guess part of the problem with that request is that basically the Legislature has said that judges don't have really the discretion to give anybody a chance when it comes to drug-sale crimes. Much of the penalty or punishment that goes into these offenses is set in stone, and I can't change it. If I tried to change it, then I would get a directive from a higher court to tell me to do what the law says. So unfortunately, and I keep thinking that we will get the word into the community, that if you are going to sell cocaine in the city of Decatur and you're going to get caught, that you're going to be looking at mandatory minimum sentences that are just tremendous sentences. And that's not because the judge necessarily wants it that way, or the District Attorney or anyone else. That's just the way it is. And I suppose there is probably nothing that, you know, I would rather do than see a young man like you be doing productive things, and not be put into this position where you are looking at a stiff prison sentence simply because that's what the law requires and does not allow anything else."
(R. 289-90.)
In a recent Alabama Supreme Court opinion, Ex parte Garner,781 So.2d 253 (Ala. 2000), that Court held that it is within the trial court's discretion to allow enhancements imposed pursuant to § 13A-12-250 and 13A-12-270, Ala. Code 1975, to run concurrently when the defendant is convicted of separate offenses. In light of that holding and the trial judge's comments during sentencing, we remand this case in order to give the trial court an opportunity to reconsider his three 10-year sentence enhancements imposed pursuant to § 13A-12-250 and § 13A-12-270, Ala. Code 1975. If necessary, the trial court may conduct a sentencing hearing. The return to this court shall include the *Page 1224 
written findings and a transcript of any proceedings in the circuit court. A return shall be filed with this court within 30 days of this opinion.
REMANDED WITH INSTRUCTIONS.*
Long, P.J., and McMillan, and Fry, JJ., concur. Baschab, J., dissents without opinion.
* Note from the reporter of decisions: On June 23, 2000, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On September 15, 2000, that court denied rehearing, without opinion. On March 23, 2001, the Supreme Court denied certiorari review, without opinion (1000015).