KELLUM, Judge.
The appellant, Jeremy Glenn McDaniels, was convicted of manslaughter, a violation of § 13A-6-3(a)(l), Ala.Code 1975. McDaniels was sentenced to 15 years’ imprisonment; that sentence was split, and he was ordered to serve 3 years’ imprisonment followed by 3 years’ probation. The circuit court ordered McDaniels to pay $5,800 to the crime victims compensation fund and court costs.
The record indicates the following pertinent facts. Charles Scarbrough testified that he was serving as the designated driver for his group of friends, who were patrons at Club Casino on October 28, 2012. Scarbrough testified that he was sitting in a chair at the club and saw a woman and a man “hanging out” when another man, later identified as Benjamin Reed, approached the pair and an argument ensued. According to Scarbrough, Reed seemed irritated that the woman was with the other man. As the three argued, Raymond Boykin intervened and appeared to be protecting the woman from Reed. After the argument continued for 15-20 minutes, McDaniels, who had been sitting down and *1181 “didn’t seem to [be] involved in any way, shape, or form” got out of his chair and punched Boykin in the side of the head. (R. 76.) Scarbrough indicated that Boykin never saw the punch coming and instantly fell to the floor, hitting his head on a table in the process. According to Scarbrough, McDaniels “[t]ook a couple extra steps to put a little extra oomph” into the punch. (R. 97.) Boykin remained motionless on the floor afterward. Scarbrough testified that Boykin spoke in a voice loud enough to be heard over the noise of the bar, did not act overly aggressive, and was not close enough with anyone to engage in a physical altercation when he was punched.
On cross-examination, Scarbrough said that a blonde-haired woman was standing up talking to a heavier-set man who was sitting in a chair. Scarbrough remembered seeing Reed approach her, seemingly aggravated that she was there with another man. When Reed became increasingly aggressive toward the woman, Boykin approached Reed and stated that he was not going to allow Reed “to touch a woman like that in front of [him].” (R. 90.) After a few minutes of argument between Boykin and Reed, Reed swung at Boykin across the table but missed. Boy-kin then began to circle around the table before McDaniels punched him. Scarb-rough criticized the way Boykin was treated after the punch. Scarbrough testified that several bar patrons placed Boykin in a chair but that Boykin fell out of the chair to the floor.
Michael Chun testified that he was at Club Casino on October 28, 2012, with his girlfriend and her friend. Chun testified that two girls started fighting. A tall man then began yelling back and forth with one of the women. According to Chun, Boykin came around to the table as if “he was trying to get them to calm down.” (R. 100.) As Boykin walked around the table, Chun saw McDaniels walk up and punch him in the side of the head.
Robyn Chun, Michael Chun’s wife and girlfriend at the time of the incident, testified that she saw a female crawling across a table to throw a drink at someone. Robyn then saw soméone punch Boykin on the side or back of the head. Robyn testified that after Boykin was punched, people crowded around him and tried to get Boy-kin to sit in a chair; she said that she did not see him fall from the chair. Robyn testified that she did not see Boykin punch or swing at anyone.
Donnie Ray Broadus’s family owned Club Casino. Broadus testified that he was working on the night of the incident. According to Broadus, everyone at the club was having a good time until he saw a young lady run across the club and begin to argue with another girl. Broadus testified that one of the bouncers took care of the situation. Afterward, a group of men gathered and started to argue. Broadus testified that he escorted Reed out of the club after he saw Reed throw a punch at another man. As Broadus escorted Reed out of the club, he saw another bouncer escorting McDaniels out of the club. Broadus testified that as he returned inside, he saw a few people standing over Boykin, trying to wake him up. When Boykin did not respond after a few minutes, Broadus telephoned 911 for emergency assistance, and paramedics responded to the scene. Broadus testified that he never saw anyone place Boykin in a chair. Afterward, Broadus and an off-duty police officer spoke with McDaniels and told him not to leave.
Brianna Capps testified that she went to the club with Robyn and Michael Chun on the night of the incident. Capps testified that she was sitting around talking when she noticed two girls arguing. Capps testified that she saw Boykin get up and walk *1182 toward the women when McDaniels “c[a]me out of nowhere and just hit him in the. head.” (R. 158-159.) After Boykin was punched, he fell to the floor backwards. Bystanders attempted to seat Boykin in a chair, but laid him back on the floor once it was apparent that he was not waking up. Capps testified that Boykin fell out of the chair at one point but that bystanders caught him before he hit the floor,
. John Talbott testified that he assisted with security at the club and that he was present on the night of the incident. Tal-bott testified that he helped escort one of the women out of the bar after a fight broke out between her and another woman. When he returned, another fight had broken out and Talbott saw Boykin fall over and hit his head on a chair.
William Harris was employed as a bouncer at the club and was working there on the night of the incident. Harris testified that he heard something fall and turned around to see Boykin lying on the floor. Harris attended to Boykin, placing him in a chair and wiping his face with a wet rag. After another bouncer realized that Boykin was not breathing properly, the bouncers laid Boykin back on the floor and telephoned 911 for emergency medical assistance.
Ray Oakley was employed as a bouncer at the club and recognized McDaniels and Boykin as regular customers. Oakley testified that he was working on the night of the incident and heard a bunch of screaming and shouting after two women were kicked opt of the club. Oakley looked and saw “something going on between” Boykin and Reed. Oakley approached the men, but McDaniels stepped out of the crowd and punched Boykin before Oakley could intervene. Oakley never saw Boykin punch or swing at anyone before McDaniels attacked him. After McDaniels punched Boykin, Oakley never saw Boykin move again.
Tim Lowery, a friend of Broadus’s, testified that he visited the club on the night Boykin was punched. Lowery testified that he and Broadus were walking toward the stage when they saw a woman yelling at someone. As Broadus and two other employees approached the woman and escorted her from the bar, Lowery went to the bar and grabbed a bottle of water and then went to the restroom. When Lowery returned, he began talking to Broadus when he saw Reed reach across a table and slap Boykin. Broadus immediately grabbed Reed to escort him out of the club. Boykin initially began to walk around the table as if he was “going after” Reed but stopped and said that he did not want any trouble when Lowery told him to stop. As Boykin then reached to grab his drink, McDaniels, who was walking toward the exit door, turned and hit Boykin from behind with what Lowery called a “coward punch.” (R. 245.) As he was hit, Boykin immediately fell over a chair and hit his head on the dance floor. According to Lowery, Boykin hit his head “really hard” on the floor — bouncing three to six inches off the floor upon impact. Others immediately began to administer first aid to Boy-kin. Lowery saw Boykin placed in a chair before being placed back down on the floor.
Upon realizing the seriousness of Boy-kin’s condition, police officers detained McDaniels and transported him to the Mobile Police Headquarters for an interview. Kent Quinnie, a detective with the Mobile Police Department, testified that he noticed that McDaniels had redness on his knuckles. McDaniels was advised of his Miranda[1] rights, waived those rights, and gave a statement to police. McDaniels *1183 told police that he went to Club Casino with Reed, Reed’s girlfriend, and another woman. McDaniels .said that he was sitting talking to Reed’s girlfriend and the other woman when McDaniels’s' ex-girlfriend approached and began yelling. Afterward, Boykin approached the table and swung at Reed. McDaniels said that he told Boykin that Reed was his best friend and that Boykin swung at him. McDaniels admitted that he “jabbed” Boykin in the chin after Boykin said “fuck you and [Reed]” to McDaniels. (C. 81.) According ■to McDaniels, he did not believe that he had hit Boykin hard enough to-hurt him.
Dr. Staci Turner, a medical examiner for the State of Alabama, testified that she performed an autopsy on Boykin. Dr. Turner indicated that Boykin had a few abrasions and scrapes on his chest but no bruises on his face or chin. Dr. Turner indicated that there was bleeding around Boykin’s brain due to a tear in a small artery. Boykin also had two contusions to his scalp, and Dr.'Turner testified that those, along with the artery tear and bleeding, were the only noticeable injuries to Boykin. Those contusions continued through the scalp and resulted in torn blood vessels and lesion bleeds. According to Dr. Turner, those contusions were not necessarily lethal but the other head injuries would have caused Boykin to become unconscious and to die very quickly-. Dr. Turner testified that the artery tear could have either been caused by a fist to the head or from striking the head on the floor after a fall. Dr. Turner concluded that Boykin’s death was caused by blunt-force trauma to his head. A toxicology report performed on Boykin indicated that his blood-alcohol level was 0.182 at the time of his death.
Raven Dees testified in McDaniels’s defense. Dees testified that she was at the club on the night of the incident and witnessed Reed and Boykin involved in an argument. According to Dees, Boykin swung at Reed and then swung at McDan-iels. McDaniels leaned back and then punched Boykin, knocking him unconscious instantly. Dees testified that Boy-kin’s friend picked him up and sat him in a chair. In the chair, Boykin was coherent and looking around for around 5 or 10 minutes before suddenly falling out of the chair. Dees testified that Boykin “caught the back side of his head on the corner of the table” as he fell and then appeared to have a seizure. (R. 370.)
McDaniels called Reed to testify in his defense. Reed testified that he saw his ex-wife and her husband at the club and stopped to speak with them. When Reed returned to the table his girlfriend, Jodi Walker, looked disheveled and told him that McDaniels’s ex-girlfriend had grabbed her headband. At that point, Boykin approached Walker and pointed his finger in her face saying that the ex-girlfriend did not hit Walker. Reed claimed that he told Boykin that this was none of his business and that Boykin said “fuck you” in response. (R. 451.) According to Reed, he swung at Boykin before a bouncer grabbed him and threw him out of the bar. Reed said that Boykin was acting aggressively toward him and claimed that Boykin’s demeanor toward him and Walker was why he threw a punch at Boykin.
McDaniels testified in his own defense. According to McDaniels, he went to the club unwillingly with Reed, Walker, and Walker’s friend. McDaniels said that he was sitting at 'a table talking to Walker when his ex-girlfriend came and jumped on the table before club bouncers escorted McDaniels’s ex-girl-friend out of the building. Afterward, McDaniels heard Reed cursing and turned to see Reed and Boy-kin standing on opposite sides of a table going .toward each other. A bouncer grabbed Reed and turned to take him out *1184 of the building, but Boykin kept cursing and approaching Reed. McDaniels told Boykin that Reed was his best friend, and Boykin responded by saying “fuck you and your best friend.” (R. 397.) McDaniels testified that Boykin appeared to take a swing at him and that McDaniels reacted by jumping back and punching Boykin. According to McDaniels, he did not swing very hard.
After both sides rested and the circuit court instructed the jury on the applicable principles of law, the jury found McDaniels guilty of manslaughter. This appeal followed.
McDaniels raises several issues on appeal. In light of the evidence presented at trial, we heed address only one of his claims: Whether the circuit court erred when it failed to instruct the jury on assault in the third degree as a lesser-included charge to reckless manslaughter.[2]
This Court has previously held:
“ ‘A trial court has broad discretion in formulating its jury instructions, providing they are an accurate reflection of the law and facts of the case. Coon v. State, 494 So.2d 184 (Ala.Cr.App.1986). When requested charges are either fairly and substantially covered by the trial judge’s oral charge or are confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law, the trial judge may properly refuse to give such charges. Ex parte Wilhite, 485 So.2d 787 (Ala.1986).’
“Ward v. State, 610 So.2d 1190, 1194 (Ala.Cr.App.1992).”
Hemphill v. State, 669 So.2d 1020, 1021 (Ala.Crim.App.1995). Further,
“ ‘ “A person accused of the greater offense -has a right to have the court charge on lesser included offenses when there is a reasonable theory from the evidence supporting those lesser included offenses.” MacEwan v. State, 701 So.2d 66, 69 (Ala.Crim.App.1997). An accused has the right to have the jury charged on “‘any material hypothesis which the evidence in his favor tends to establish.’ ” Ex parte Stork, 475 So.2d 623, 624 (Ala.1985). “[E]very accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, ■however[] weak, insufficient, or doubtful in credibility,” Ex parte Chavers, 361 So.2d 1106, 1107 (Ala.1978), “even if the evidence supporting the charge is offered by the State.” Ex parte Myers, 699 So.2d 1285, 1290-91 (Ala.1997), cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998). However, “[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.” § 13A-l-9(b), Ala.Code 1975. “The basis of a charge on a lesser-included offense must be derived from the evidence presented at trial and cannot be based on- speculation or conjecture.” Broadnax v. State, 825 So.2d 134, 200 (Ala.Crim.App.2000), aff'd, 825 So.2d 233 (Ala.2001), cert. denied, 536 U.S. 964, 122 S.Ct. 2675, 153 L.Ed.2d 847 (2002). “ ‘A court may properly refuse to charge on a lesser included offense only when (l) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the *1185 requested charge would have a tendency to mislead or confuse the jury.’ ” Williams v. State, 675 So.2d 537, 540-41 (Ala.Crim.App.1996), quoting Anderson v. State, 507 So.2d 580, 582 (Ala.Crim.App.1987).’
“Clark v. State, 896 So.2d 584, 641 (Ala.Crim.App.2000) (opinion on return to remand).”
Harbin v. State, 14 So.3d 898, 909 (Ala.Crim.App.2008).
“In Jones v. State, 585 So.2d 180 (Ala.Cr.App.1991), and in Anderson v. State, 533 So.2d 714 (Ala.Cr.App.1988), this court noted that a defendant may be entitled to a charge on assault in the second degree as a lesser included offense to attempted murder. In Edwards v. State, 671 So.2d 129 (Ala.Cr.App.1995), this court stated that assault can be a lesser included offense of murder. See, also, commentary to § 13A-1-9, Ala.Code 1975, indicating that assault in the first or second degree may be a lesser included offense ‘under an indictment charging murder.’ ”
Johnson v. State, 675 So.2d 85, 86-87 (Ala.Crim.App.1995). Thus, McDaniels would have been entitled to an instruction on the lesser-included offense of assault in the third degree if there was a reasonable theory from the evidence that McDaniels “[w]ith intent to cause physical injury to another person, [caused] physical injury to any person.” § 13A-6-22(a)(l), Ala.Code 1975.
In the instant case, a review of the record reveals that there was some evidence presented that McDaniels’s punch did not cause the fatal injury to Boykin. Several witnesses testified that, after Boy-kin was unconscious, bystanders placed him in a chair and that Boykin fell from the chair. Dees testified that Boykin regained consciousness and was coherent for 5 or 10 minutes after McDaniels punched him. According to Dees, Boykin was sitting in a chair and fell, striking his head on the corner of a table. Thus, there was evidence indicating that Boykin’s fatal injury was caused by a subsequent fall from the chair rather than from McDaniels’s punch. Because there was evidence that McDaniels only injured Boykin and did not cause the fatal blow, the circuit court committed reversible error when it refused to instruct the jury on assault in the third degree.
Based on the foregoing, the judgment of the circuit court is reversed, and this case is remanded for proceedings consistent with this opinion.[3]
REVERSED AND REMANDED.
WINDOM, P.J., and WELCH and JOINER, JJ., concur.
BURKE, J., concurs in the result.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Although the circuit court denied McDan-iels's request for an instruction on assault in the third degree, it included an instruction on criminally negligent homicide as a lesser-included offense.

. Because we are reversing the judgment for reasons discussed above, we pretermit discussion of McDaniels’s remaining contentions on appeal.